STATE OF NORTH CAROLINA v. JEAN YVONNE MOORE

No. 795SC1045

(Filed 15 April 1980)

1. **Receiving Stolen Goods § 1.1— money bag found on sidewalk—property actually stolen**

   In a prosecution for receiving stolen property, evidence was sufficient to support a finding that the property was in fact stolen where it tended to show that defendant's companion found a bank deposit bag on the sidewalk in front of a drugstore; the bag had the name of a bank on the outside, and checks inside had the name of the drugstore on them; the owner of the bag could reasonably have been ascertained but was not sought; the finder took the bag, boarded a bus, and left the area; and the finder divided the money with her companions.

2. **Receiving Stolen Goods § 5.1— money bag found on sidewalk—money received by defendant—sufficiency of evidence of receiving stolen goods**

   Evidence was sufficient to be submitted to the jury in a prosecution for receiving stolen goods where it tended to show that defendant was present when a money bag was found on a sidewalk and was present when it was opened, though defendant never touched the bag, removed anything therefrom, or had possession of it; defendant knew the bag was not the property of the finder; and defendant nevertheless unlawfully received one-third of the money in the bag and continued to possess and conceal the money with a dishonest purpose.

APPEAL by defendant from *Tillery, Judge*. Judgment entered 25 July 1979 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 25 March 1980.

Defendant was tried upon an indictment which charged her with felonious larceny, G.S. 14-70, felonious receiving, G.S. 14-71, or felonious possession, G.S. 14-71.1, of a bank bag containing $1,435.00 in cash and $320.00 in checks sometime between 20 March and 29 March 1979. The State's case consisted of the testimony of three witnesses who presented the following evidence.

In March, 1979, James W. Woodard was a pharmacist at Hall's Drug Store located at the corner of Fifth and Castle Streets in Wilmington. In the daily course of business operations for the drugstore, the cashier checks the daily cash receipts against the register amount and brings the cash and checks to Woodard who puts them in a safe. Woodard later tabulates and totals the amount of cash and checks received over several days and makes out a deposit slip. He normally places the money and checks in a bank deposit bag which he takes home to his wife who then makes the deposit. Between 20 March and 29 March 1979, he thought he took such a bank bag home. When he later checked to see if he had made a deposit for sales on 14 through 19 March, he found he had not. He discovered two deposits made on the same date were missing. The deposit slips were for $467.40 and $1,435.00. Of these deposits, $771.04 was in checks and the balance in cash. Both deposits would have been in one blue bank deposit bag with a locking zipper which had "Bank of North Carolina" written on the side of it. The name of the store was on all checks contained in the deposit bag.

W. B. Prescott of the Wilmington Police Department picked up defendant on the afternoon of 3 April 1979 in connection with the investigation of this case. He gave defendant her full *Miranda* rights which she waived. Defendant was seventeen years old and in the twelfth grade in school. W. A. Elledge, a detective with the Wilmington Police Department, then questioned defendant who made a statement to the detective. The detective testified about the content of the statement at trial. In her statement to the detective and in response to his questions, defendant revealed the following.

On 21 March, Mary Brown, Earlene Brown and defendant were waiting at the bus stop located at the corner of Fifth and Castle Streets in front of Hall's Drug Store. They were going to ride the bus to the hospital. While they were waiting, Mary Brown found a bank bag on the sidewalk. She picked up the bag. The three girls then boarded the bus. When they got to the hospital, the girls went into the bathroom and divided up the money. Defendant received approximately $500.00 out of the money bag. Defendant did not have possession of or even touch the bag. She spent most of the money she received, though some was stolen from her.

The jury found defendant guilty of feloniously receiving stolen property and she appeals.

*Attorney General Edmisten, by Associate Attorney Grayson G. Kelley, for the State.*

*Peter Grear, for defendant appellant.*

VAUGHN, Judge.

The issue raised by this appeal is whether the evidence considered in a light most favorable to the State is sufficient to go to the jury and support the jury's verdict. We hold that the motion to dismiss was properly denied by the trial court.

Defendant stands convicted of feloniously receiving stolen property, in violation of G.S. 14-71, which makes it unlawful to receive any property, the stealing or taking whereof amounts to larceny, knowing or having reasonable grounds to believe the same to have been stolen.

[1] We will first consider whether the property involved in this case could be said to have been stolen by Mary Brown.

Larceny, according to the common law, has been defined as the felonious taking by trespass and carrying away by any person of the property of another without the latter's consent and with the felonious intent permanently to deprive the owner of his property and to convert it to the taker's own use. *State v. McCrary,* 263 N.C. 490, 139 S.E. 2d 739 (1964).

Some ancient cases held that lost goods were not the subject of larceny under any circumstances. As late as 1832, a member of our Supreme Court questioned whether lost as opposed to mislaid property was the subject of larceny. *State v. Roper,* 14 N.C. 473 (1832) (opinion of Henderson, C.J.). By way of contrast to *Roper* in *State v. Farrow,* 61 N.C. 161 (1867), the Court upheld defendant's larceny conviction for taking a bucket of peas which the owner had "mislaid" by leaving it at a market on a cart he mistakenly thought to be that of a friend. Notwithstanding what was said in some of the earlier cases, however, the modern view in this jurisdiction as well as others is that casually lost property may be the subject of larceny as well as that which is mislaid. No distinction is now made between property "lost" and property "mislaid."

*See* Annot.—*Larceny by Finder of Property*, 36 A.L.R. 372 (1925). Unquestionably, the money found by Mary Brown had been lost by the true owner. Even so, the law puts constructive possession of the property in the hands of the one who lost it until someone else takes actual possession thereof. *See* Riesman, *Possession and the Law of Finders*, 52 Harv. L. Rev. 1105, 1130-33 (1939).

> Whether the person who finds and keeps lost property for his own use is guilty of larceny depends upon whether at the time he finds the property he knows or has reason to believe that he can ascertain the owner of the property. If at the time of finding, he knows or has reasonable means of knowing or ascertaining the owner, he is deemed guilty of larceny if he keeps the property with the intent to deprive the owner thereof. Thus, if the article found bears marks or other clues known to the finder as a ready means of identifying the owner, the finder will be guilty of larceny if he appropriates it to his own use. It is not necessary that the finder should know who the owner is, but he must have such means of inquiry on that subject as to give him reason to believe that, with reasonable effort on his part, the owner will be found.

2 Wharton's Criminal Law and Procedure § 459 at 94 (1957). As another commentator has put it, there must be a "clue to ownership" before the taking by the finder can be a larceny. If under all of the circumstances the finder would have reason to believe the owner and his property could be brought together again, there is a "clue to ownership." R. Perkins, Criminal Law 249-50 (1969). In this case, there were several "clues to ownership" of the lost property sufficient to cause the finder to know that the true owner and his property could probably be reunited. The name of the depository bank was clearly printed on the outside of the bag. Within were numerous checks made out to the drugstore which was near where the property was found. The amount of money and the location are also factors which give a clue of ownership. We are not dealing here with an unidentifiable small coin that could have been lost by anyone but with a large sum of money and checks payable to a business adjacent to the sidewalk on which it was found.

When Mary Brown did not attempt to find the owner, she was guilty of larceny if it was her present intent to deprive the owner of his lost property and convert it to her own use.

> In every instance there must be an original, felonious intent, general or special, at the time of the taking or finding of lost property, in the mind of the accused, to construe larceny. If such intent be present, no subsequent act or explanation can change the felonious character of the taking. If it be not present, it is only a trespass and cannot be made a felony by any subsequent misconduct or bad faith in the taker. "The omission to use the ordinary and well known means of discovering the owner of goods lost and found, raises a presumption of fraudulent intention, more or less strong against the finder, which it behooves him to explain and obviate; and this is most readily and naturally done by evidence that he endeavored to discover the owner, and kept the goods safely in his custody. . . ."

*State v. Arkle*, 116 N.C. 1017, 1031, 21 S.E. 408, 408 (1895); *State v. England*, 53 N.C. 399 (1961). The felonious intent in this case probably did arise but need not have arisen at the moment Mary Brown picked up the money bag. Where a closed receptacle, container or pocketbook is found and the contents are not known until later, a finder may be guilty of larceny if a felonious intent is formed as soon as the contents are discovered. *See, e.g., State v. Hayes*, 98 Iowa 619, 67 N.W. 673 (1896). It is not clear at what point the bag was first opened, whether it was at the bus stop, on the bus or at the hospital. The evidence is that Mary Brown did not return it to the owner but instead divided the money with her companions including defendant. "Intent being a mental attitude, it must ordinarily be proven, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be inferred." *State v. Murdock*, 225 N.C. 224, 226, 34 S.E. 2d 69, 70 (1945). The State has proven that the owner who could reasonably have been ascertained was not sought. The bag was found in front of the owner's store, yet the finder boarded a bus and left the area. From all of the circumstances, a felonious intent can be inferred.

A similar case is *State v. Holder*, 188 N.C. 561, 125 S.E. 113 (1924), where tourists in our State inadvertently left a coat containing a pistol, pocketbook, traveler's checks, and money at the side of a road where their car had been mired in mud. The defendants, who were brothers, and others had assisted the tourists in getting free of the mud. The coat was discovered by defend-

ants after the tourists had left and the contents turned up when the pockets were searched. Defendants divided the articles, burned the checks and gave one Sam Grady a dollar to keep quiet. The tourists, discovering their loss, returned, and sought out the sheriff whose deputy obtained the coat from the defendants. All property was returned except the pistol and the destroyed checks on which payment was stopped. The case went to the jury on felonious larceny. The Supreme Court held this to be a felonious larceny. The courts specifically affirmed the trial court's instruction that

> Where property is lost and a person finds it, then the duty of the finder is to keep the property for the purpose of finding the owner and he must use reasonable means for the purpose of finding the owner. If he keeps it and keeps it intact for the owner, he has a right to do that, but if the property is not abandoned but is left by accident or lost and a person finds it and he takes it with the intention at the time of taking it to steal it, he is just as guilty of larceny as if he had gone in the night time and stolen it secretly.

*Id.* at 563, 125 S.E. at 113-14; *see also State v. Epps*, 223 N.C. 741, 28 S.E. 2d 219 (1943).

[2]    We must at this point note that the evidence was such that it could permit the jury to find that the property was not stolen by defendant but was stolen by Mary Brown and thereafter unlawfully received by defendant. Among other things, the State's evidence tended to show that defendant never touched the bag, never went into the bag and never had possession of the bag. She, instead, unlawfully received a third of the money in the bag. *Contrast State v. Prince*, 39 N.C. App. 685, 251 S.E. 2d 631, *cert. den.*, 296 N.C. 739, 254 S.E. 2d 180 (1979).

Having established the theft of goods by someone other than the accused, the State had further to establish that the accused knowing or having reasons to know the goods were stolen received or aided in concealing the goods and continued such possession with a dishonest purpose. There is plenary evidence of these elements of the crime of felonious receiving of stolen money. Defendant was present when the bag was found and was present when it was opened. She knew it was not the property of Mary Brown. Defendant on receipt of the money used it to buy

clothes for herself. She continued to possess and conceal the money with a dishonest purpose.

The jury charge was not brought forward. We assume, therefore, that the jury was properly instructed on the foregoing principles.

No error.

Judges CLARK and MARTIN (Harry C.) concur.