STATE OF NORTH CAROLINA v. VONDERICK LANGLEY

No. COA04-1100

(Filed 6 September 2005)

**1. Appeal and Error— plain error—properly presented**

Defendant argued an assignment of error in compliance with Appellate Rule 28(b)(6) where he argued in his brief that the trial court committed plain error by failing to dismiss the charge against him ex mero motu and asked for application of Appellate Rule 2.

STATE v. LANGLEY

[173 N.C. App. 194 (2005)]

2. **Firearms and Other Weapons— possession of firearm by felon—category of gun—variance**

There was a fatal variance between the indictment and the evidence where the indictment charged possession of a handgun by a felon and the evidence showed possession of a sawed-off shotgun. The Felony Firearms Act, N.C.G.S. § 14-415.1(a), banned possession of categories of firearms by convicted felons; when an indictment alleges possession of a handgun rather than a firearm, the State must prove the essential element that defendant possessed a handgun.

3. **Constitutional Law— effective assistance of counsel—tactical decision by counsel**

Defendant received effective assistance of counsel where his attorney made a tactical decision to present a theory of defense based upon defendant's own statements to police. The defenses of necessity or justification, about which defense counsel did not request instructions, were inconsistent with those statements.

Appeal by defendant from judgment entered 24 March 2004 by Judge W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 11 May 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Jay L. Osborne, for the State.*

*Lemuel W. Hinton for defendant-appellant.*

ELMORE, Judge.

Vonderick Langley (defendant) was indicted for possession of a weapon of mass death and destruction, assault by pointing a gun, assault on an officer, resisting arrest, and possession of a firearm by a felon.

The State's evidence at trial tended to show that Mary Barrett (Barrett) became engaged in a fight with Tonya, an acquaintance of defendant. Tonya then fled from Barrett, but Barrett began chasing Tonya as she walked toward a car parked on the street. Defendant, who was sitting in the front seat of the parked car, jumped out to unlock the back door for Tonya to get inside. As Barrett approached the car, defendant pointed a gun at Barrett and said, "You ain't going to 'f' with my cousin."

Barrett testified that she backed away and that defendant placed the gun in the car and then began walking away. Approximately 15 to 20 seconds later, Barrett flagged down a passing police vehicle. Officer W.L. Terry of the Greenville Police Department (GPD) testified that after he got out of his vehicle, Barrett yelled at him that defendant had pulled a gun on her. Officer Terry yelled for defendant to stop walking away, at which point defendant stated that Barrett had a knife and that he did not have a gun. Defendant then pulled down his pants and underwear and said, "See, I ain't got no gun." Defendant pulled his pants back up and started to walk away. After defendant ignored his demands to stop walking away, Officer Terry attempted to restrain defendant by grabbing his arms from behind. Defendant hit Officer Terry in the mouth with his right elbow as he shook him off. Defendant then grabbed Officer Terry by the shirt, and the two men started struggling in the street.

Upon the arrival of Officer Jay Carlton of the GPD, defendant put his hands up and was taken into custody. Officer Carlton testified that he found a gun, with the hammer cocked back, under the right front passenger seat of the car driven by defendant. Defendant, after being read his Miranda rights, gave a verbal statement to Officer Terry. Defendant said that he had taken his mother's car without her permission around 4:00 a.m. that morning and that there was no gun in the car. He stated that Barrett had a knife or a meat fork, changing between the two items several times during his account. Defendant stated that Barrett threw the knife or fork down beside the car as the police arrived. However, officers could not find either at the scene. Defendant did not present any evidence at trial. The jury found defendant guilty on all charges. From the judgment entered on 24 March 2004, defendant appeals.

[1] First, defendant argues that there was a fatal variance between the indictment and the evidence at trial such that the charge of possession of a firearm by a felon should have been dismissed. The State's evidence at trial tended to show that defendant possessed a firearm with barrel length less than 18 inches and overall length less than 26 inches, a sawed-off shotgun, but the indictment states that he was in felonious possession of a "handgun." We note that, although defendant failed to make a motion to dismiss the charge at the close of all evidence at trial, he has otherwise properly preserved this issue under our Rules of Appellate Procedure. In his brief, defendant argues that the trial court committed plain error by failing to dismiss, *ex mero motu*, the possession of a firearm by a felon charge where a

fatal variance existed between the indictment and the State's evidence. Additionally, defendant asks this Court to apply Rule 2 to the issue. Thus, defendant has argued the assignment of error in compliance with Rule 28(b)(6). *Cf. Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 401-02, 610 S.E.2d 360, 361 (2005) (appellant failed to provide argument in support of assignment of error in violation of Rule 28(b)(6); appeal dismissed for Rule violations). We believe it necessary to apply Rule 2 and consider the merits of defendant's argument in order to prevent manifest injustice.

**[2]** "A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged." *State v. Pickens*, 346 N.C. 628, 646, 488 S.E.2d 162, 172 (1997) (internal quotation omitted). A variance between the offense alleged in the indictment and the evidence presented at trial is not always fatal. *See State v. Poole*, 154 N.C. App. 419, 423, 572 S.E.2d 433, 436 (2002), *cert. denied*, 356 N.C. 689, 578 S.E.2d 589 (2003). "It is only 'where the evidence tends to show the commission of an offense not charged in the indictment [that] there is a fatal variance between the allegations and the proof requiring dismissal.' " *Id.* (quoting *State v. Williams*, 303 N.C. 507, 510, 279 S.E.2d 592, 594 (1981)). Accordingly, the defendant must show a variance with respect to an essential element of the offense. *Pickens*, 346 N.C. at 646, 488 S.E.2d at 172.

In order to determine whether the averment of a "handgun" was a material and essential element of the offense charged in the indictment, we look to the language of the Felony Firearms Act. N.C. Gen. Stat. § 14-415.1 provides that

[i]t shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches, or any weapon of mass death and destruction as defined in G.S. 14-288.8(c). . . .

N.C. Gen. Stat. § 14-415.1(a) (2003). In enacting the Felony Firearms Act, the General Assembly did not ban *all* firearms from being possessed by convicted felons. Instead, the General Assembly prohibited three different categories of weapons: (1) handguns; (2) firearms with a barrel length of less than 18 inches or an overall length of less than 26 inches; and (3) weapons of mass death and destruction. A

handgun is a category of firearm, but it is distinct from the class of "other firearms" of certain measurements stated in the Felony Firearms Act. The consequence of the legislature's distinction is that felony possession of a handgun requires different proof at trial than felony possession of a firearm. In *State v. Cloninger*, 83 N.C. App. 529, 531, 350 S.E.2d 895, 896-97 (1986), this Court interpreted N.C. Gen. Stat. § 14-415.1 and concluded that the proof of a prohibited firearm requires that the gun conform to the measurements stated in the statute, whereas the proof of a handgun need not include these measurements applicable to firearms. Thus, when an indictment alleges possession of a handgun rather than a firearm, the State must prove the essential element that defendant possessed a handgun.

Here, the State produced evidence that defendant possessed a firearm with barrel length less than 18 inches and overall length less than 26 inches. This evidence of a sawed-off shotgun was not evidence of a handgun. A handgun is defined as "[a] pistol, revolver, or other gun that has a short stock and is designed to be held and fired by the use of a single hand." *See* N.C. Gen. Stat. § 14-409.39(3) (2003). If a sawed-off shotgun were considered to be a handgun, then it could legally be possessed by a felon in his own home or by a person who is not a convicted felon. *See State v. McNeill*, 78 N.C. App. 514, 516, 337 S.E.2d 172, 173 (1985) (recognizing exception in N.C. Gen. Stat. § 14-415.1 permitting felon to possess handgun in his own home). This cannot be true, as the General Assembly intended that possession of a sawed-off shotgun be illegal except in certain limited and specific circumstances. *See* N.C. Gen. Stat. § 14-288.8; *State v. Fennell*, 95 N.C. App. 140, 143-44, 382 S.E.2d 231, 233 (1989) (a sawed-off shotgun, a weapon of mass death and destruction, is an especially dangerous firearm); *United States v. Walker*, 39 F.3d 489, 491 (4th Cir. 1994) ("With limited and specific exceptions, no one in North Carolina, ex-felon or otherwise, may possess, store or acquire a sawed-off shotgun for any reason or under any circumstance.").

The State argues nonetheless that describing the category of firearm in the indictment was surplusage, citing to *State v. Pickens*, 346 N.C. 628, 488 S.E.2d 167 (1997). In *Pickens*, the indictment alleged that the defendant "did discharge a shotgun, a firearm, into the dwelling house . . . while it was actually occupied." *Id.* at 646, 488 S.E.2d at 172. The evidence at trial established that the defendant discharged a handgun. *Id.* at 645, 488 S.E.2d at 171-72. This Court found that the averment of the shotgun in the indictment was mere surplusage because the indictment alleged a firearm and the essential

element of the offense stated in N.C. Gen. Stat. § 14-34.1(2) is "to discharge . . . [a] firearm." *Id.* at 646, 488 S.E.2d at 172. We find *Pickens* distinguishable from the instant case. The defendant in *Pickens* was charged with the offense of discharging a firearm into occupied property in violation of N.C. Gen. Stat. § 14-34.1(2). As N.C. Gen. Stat. § 14-34.1(2) broadly covers *all* firearms, a firearm is the essential element of the offense. It is inconsequential which type of firearm the State alleged in the indictment, as it also alleged a "firearm." The proof at trial was of a type of firearm, and this proof conformed to the allegations of the essential elements stated in the indictment. In the instant case, the State's proof at trial was of a specific category of firearm, a sawed-off shotgun. The indictment, however, specified an entirely different category of firearm prohibited by the statute. Unlike the statute at issue in *Pickens*, N.C. Gen. Stat. § 14-415.1(a) narrowly prohibits three classes of weapons: handguns; firearms with barrel length less than 18 inches or overall length less than 26 inches; and weapons of mass death and destruction. The averment of a handgun cannot be surplusage, as the category of weapon is an essential element of the offense stated in N.C. Gen. Stat. § 14-415.1(a).

The State's decision to allege the possession of a handgun required that it produce evidence of this essential element at trial. As the State failed to produce evidence of a handgun, we hold that there was a fatal variance between the indictment and the evidence. Accordingly, we vacate defendant's conviction for possession of a firearm by a felon. *See State v. Smith*, 155 N.C. App. 500, 513, 573 S.E.2d 618, 627 (2002) (vacating judgment on defendant's conviction where fatal variance existed between indictment and evidence at trial), *disc. review denied*, 357 N.C. 255, 583 S.E.2d 287 (2003).

[3] Next, defendant contends that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution.

> To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test. . . . First, he must show that counsel's performance fell below an objective standard of reasonableness. . . . Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error.

*State v. Blakeney,* 352 N.C. 287, 307-08, 531 S.E.2d 799, 814-15 (2000) (internal citations omitted), *cert. denied,* 531 U.S. 1117, 148 L. Ed. 2d 780 (2001).

Defendant argues that his attorney's failure to request jury instructions on the defenses of necessity and justification with respect to the charge of assault by pointing a gun resulted in ineffective assistance of counsel. "The decision whether or not to develop a particular defense is a tactical decision that is part of trial strategy. Such decisions are generally not second-guessed by courts [when reviewing a claim of ineffective assistance of counsel]." *State v. Lesane,* 137 N.C. App. 234, 246, 528 S.E.2d 37, 45 (citation omitted), *disc. review denied,* 352 N.C. 154, 544 S.E.2d 236 (2000); *see also State v. Fletcher,* 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001) ("Counsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear."), *cert. denied,* 537 U.S. 846, 154 L. Ed. 2d 73 (2002). In the closing argument, defense counsel argued that the State had failed to prove beyond a reasonable doubt that defendant possessed the gun. In his statement to police, defendant denied possession or use of the gun during the altercation with Barrett. Defendant's denial of his pointing of any gun was inconsistent with the defenses of necessity or justification. Defendant's attorney made a tactical decision to present a theory of defense based upon defendant's own statements to police. As such, defense counsel's decision not to request jury instructions on these defenses cannot be ineffective assistance of counsel.

We have reviewed defendant's remaining assignments of error and determined that they are without merit. We hereby vacate defendant's conviction for possession of a firearm by a felon. We find no error in defendant's other convictions.

Vacated in part; No error in part.

Judges McGEE and CALABRIA concur.