STATE OF NORTH CAROLINA v. KARENNA T. JONES

No. COA05-901

(Filed 18 April 2006)

**Larceny— trespass as necessary element—money dug from leased property by leaseholder—variance between indictment and evidence**

Every larceny includes a trespass. There was a fatal variance between the indictment and the evidence in this case because defendant was leasing the property in which she found buried money. Her leasehold entitled her to lawful possession of the real property and the money; the crime she may have committed was conversion by a lessee.

Appeal by defendant from judgment entered 3 March 2005 by Judge Alma L. Hinton in Halifax County Superior Court. Heard in the Court of Appeals 22 March 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Hope Murphy White for the State.*

*Adrian M. Lapas, for defendant-appellant.*

McCULLOUGH, Judge.

Karenna T. Jones ("defendant") appeals from judgment entered upon a jury verdict finding her guilty of felonious larceny. We reverse.

The State presented evidence tending to show: in June of 2002, Ora Evans ("the victim"), a resident of Onslow County, returned to 5226 Shields Road in Tillery, North Carolina, to take care of her ailing mother. The victim, uncomfortable with the presence of the many health care workers in her mother's home, buried $13,400 in cash ("the money") in her mother's backyard.[1] The victim testified she placed $3,400 in a zipper pouch ("the pouch"), while the remaining $10,000 was placed in a metal box ("the box"). In the pouch, the victim described through receipts how she accumulated the money. Further, the victim included a written note ("the note") in the pouch. The note stated she and her son were the owners of the money. The note included information such as the date she buried the money, her address in Tillery, and the total amount buried. The victim wrapped the money, the receipts, and the note in aluminum foil and then placed everything in a hole she dug in her mother's backyard. The victim also drew a map in order to locate the area where she buried the money. She placed the map in her personal files at home in Onslow County.

Shortly after the victim's mother died in November 2002, she returned to Onslow County. On 4 January 2004, the victim and her nephew came back to 5226 Shields Road to retrieve her money. Once there, the victim realized her mother's mobile home was rented to defendant. The victim identified herself and her nephew to defendant and told defendant she had work to do in the backyard. Defendant consented at first, but quickly came to the backyard, yelled at the victim, and eventually asked her to leave. After being threatened with a gun by defendant, the victim left and went to the Scotland Neck Police Department ("Department") for assistance. The victim returned with a deputy who permitted her to dig for ten minutes, however, the victim failed to locate her money.

Deputy Tim Parker ("Deputy Parker") testified he was called to 5226 Shields Road on 7 January 2004 "in reference to somebody inside of a residence." When Deputy Parker arrived, he spoke to defendant. Defendant informed Deputy Parker of the victim's digging in the backyard. Defendant admitted to Deputy Parker that "she got curious and went out there and got a shovel . . . [and] dug one time [and] hit a metal box . . . and dug it up. And she gave me the items in the box." Defendant told Deputy Parker the box contained approxi-

---

1. Victim testified this money was earned over the years from her labor, her now deceased husband's labor, and the sale of timber. Victim also testified she and her husband kept this money to avoid having to go to the bank.

mately $3,000 and that she spent it. Defendant gave Deputy Parker the pouch which only contained the receipts. The pouch previously contained the money and the note.

Detective Bruce Temple ("Detective Temple") investigated the situation and after conversing with Deputy Parker, testified a warrant was obtained for defendant's arrest on 27 January 2004. Detective Temple further testified in response to questioning, defendant admitted taking $3200 from the yard and spending it all on bills, shopping, and meals. Defendant presented no evidence.

Defendant was found guilty of felony larceny and was sentenced to a minimum of five months to a maximum of six months in the North Carolina Department of Correction. Defendant's sentence was suspended and she was placed on supervised probation for 24 months. Defendant was ordered to pay $14,666 in restitution, attorneys fees, and court costs. Defendant appeals.

I. *Motion to Dismiss—Variance Between Indictment and Evidence*:

Defendant argues the trial court erred in denying her motion to dismiss because a fatal variance existed between the indictment and the evidence presented at trial. Defendant contends no trespassory taking occurred since her leasehold granted her lawful possession of the real property at 5226 Shields Road. Defendant further contends that absent a trespass, there can be no felonious larceny. We agree.

" 'A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged.' " *State v. Langley*, 173 N.C. App. 194, 197, 618 S.E.2d 253, 255 (2005) (quoting *State v. Pickens*, 346 N.C. 628, 646, 488 S.E.2d 162, 172 (1997)). However, "[a] variance between the offense alleged in the indictment and the evidence presented at trial *is not always fatal*." *Id.* (emphasis added). Thus, "[i]t is only 'where the evidence tends to show the commission of an offense not charged in the indictment [that] there is a fatal variance between the allegations and the proof requiring dismissal.' " *Id.* (citing *State v. Poole*, 154 N.C. App. 419, 423, 572 S.E.2d 433, 436 (2002) (quoting *State v. Williams*, 303 N.C. 507, 510, 279 S.E.2d 592, 594 (1981)). "Accordingly, the defendant must show a variance with respect to an essential element of the offense." *Id.*

"The crime of larceny requires the 'taking by trespass and carrying away by any person of the goods or personal property of another, without the latter's consent and with the felonious intent perma-

nently to deprive the owner of his property and to convert it to the taker's own use.'" *State v. Friend*, 164 N.C. App. 430, 438, 596 S.E.2d 275, 281-82 (2004) (quoting *State v. Boykin*, 78 N.C. App. 572, 576, 337 S.E.2d 678, 681 (1985)); *State v. Moore*, 46 N.C. App. 259, 261, 264 S.E.2d 899, 900 (1980). Further, "[w]hen the property has a value of more than one thousand dollars ($1,000), the larceny is a Class H felony. N.C. Gen. Stat. § 14-72(a) [(2005)]." *State v. Barbour*, 153 N.C. App. 500, 502, 570 S.E.2d 126, 127 (2002). Importantly, "[e]very larceny includes a trespass; and if there be no trespass in taking the goods, there can be no felony committed in carrying them away." *State v. Webb*, 87 N.C. 558, 559 (1882).

In the instant case and in alignment with *State v. Bailey*, 25 N.C. App. 412, 213 S.E.2d 400 (1975), the defendant here did not trespass and thus did not commit felonious larceny. *Bailey* involved a defendant who rented a mobile home including the inside furnishings. *Bailey*, 25 N.C. App. at 413, 213 S.E.2d at 400. The furnishings consisted of "a mattress and box springs . . . a couch, chair and three tables in the living room [] and a dinette set . . . [with] a table and four chairs in the kitchen area." *Id.* The defendant decided to move and "c[a]me out of [the] trailer . . . carrying . . . box springs [and a] mattress . . . a living room suite, a dining room suite, and tables." *Id.* The defendant was found guilty of misdemeanor larceny. *Id.* 25 N.C. App. at 414, 213 S.E.2d at 401. This Court framed the issue in *Bailey* as "whether defendant was in lawful possession of the furniture at the time it was allegedly taken and carried away by him." *Id.* 25 N.C. App. at 415. This Court reasoned "[i]f he was in lawful possession then there was no trespass in the taking and, hence, no larceny at common law." *Id.* 213 S.E.2d at 401-02. This Court determined the defendant was in lawful possession of the furnishings and reversed his conviction. *Id.* 25 N.C. App. at 416, 213 S.E.2d at 402.

Similarly, here the defendant was in lawful possession of the real property at 5226 Shields Road where the victim buried her money. The defendant had a valid lease to rent not only the mobile home, but also the property upon which the mobile home was located. Defendant's leasehold entitled her to lawful possession of the real property and consequently, the money the victim buried in the real property. In *Bailey*, proof the defendant lawfully possessed the property in question and thus did not engage in a trespassory taking existed in that "the furniture was in the trailer for [his] use and enjoyment, and he had *complete access as well as control over it by virtue of his tenancy* even though title remained in the landlord."

*Id.* (emphasis added). In the case *sub judice*, the defendant, pursuant to a valid leasehold, was entitled to lawful possession of both the mobile home and the real property. Moreover, she had access and control over the real property by virtue of her leasehold, including the money buried by the victim. Since defendant did not engage in a trespassory taking, an essential element of larceny is missing. Thus, a fatal variance exists between the indictment and the evidence presented at trial.

As noted by defendant, upon the facts presented in this case, "the crime [she] may have committed" (defendant's brief, p.15) would be conversion by a lessee. *See* N.C. Gen. Stat. § 14-168.1 (2005) ("[e]very person entrusted with any property as . . . lessee . . . who fraudulently converts the same, or the proceeds thereof, to his own use, or secretes it with a fraudulent intent to convert it to his own use, shall be guilty of a Class 1 misdemeanor" unless the value of the property converted exceeds $400.00 resulting in a "Class H felony.")

Reversed.

Judges McGEE and GEER concur.