STATE OF NORTH CAROLINA v. LYNN MARIE PADDOCK

No. COA09-538

(Filed 1 June 2010)

**1. Evidence— prior bad acts—admissible under Rules 404(b) and 403**

The trial court in a felonious child abuse inflicting serious bodily injury and first-degree murder case did not abuse its discretion in admitting evidence of defendant's abuse of all her surviving children. The evidence was admissible under N.C.G.S. § 8C-1, 404(b) to show defendant's intent, plan, scheme, system, or design to inflict cruel suffering on the victim, as well as malice and lack of accident, and the probative value of the evidence was not substantially outweighed by its prejudicial effect.

**2. Evidence— expert opinion—no error**

The trial court did not err in allowing an expert to testify that the victim and several of the victim's siblings were victims of ritualistic child abuse, sadistic child abuse, and torture. The expert's testimony did not amount to inadmissible opinion testimony on the credibility of the victim's siblings and the trial court's admission of the expert's testimony regarding the use of the word "torture" was not an abuse of discretion.

Appeal by defendant from judgment entered 12 June 2008 by Judge Knox V. Jenkins, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 13 January 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Ann B. Petersen for defendant-appellant.*

BRYANT, Judge.

Defendant Lynn Paddock appeals from judgments entered 12 June 2008 in accordance with jury verdicts finding her guilty of felonious child abuse inflicting serious bodily injury and first-degree murder. For the reasons stated herein, we hold no error.

On Sunday, 26 February 2006, emergency medical responders were called to the home of defendant and Johnny Paddock, where three-year-old Sean Paddock was found dead. An autopsy revealed that Sean died of asphyxiation caused by compression to his chest which prevented him from being able to breathe. The medical examiner also noted long, linear bruises on Sean's back and buttocks which were in various stages of healing.

Defendant and Johnny Paddock lived on a small farm in Johnston County with seven children: Toni, Jasmine, Randy, Dan, Hailey, Karen, and Sean Paddock.[1] Jasmine was the biological daughter of Johnny Paddock. Toni, Randy, Dan, Hailey, Karen, and Sean were adopted.

On the day of Sean's death, Dr. Benjamin Winter, an emergency room physician, examined Karen, Dan, and Hailey, who at the time were nine, nine, and seven years old, respectively. Dr. Winter later testified that each child exhibited bruises and abrasions in various stages of healing on their legs, knees, thighs, buttocks, and backs. Dr. Winter also noted that Karen and Hailey had an excessive amount of hair, a condition known as hirsutism, which can be caused by malnutrition.

That afternoon, officers in the Johnston County Sheriff's Department interviewed members of the Paddock family. Detective James Gerrell took notes during defendant's interview. After initially denying any knowledge of how Sean died but admitting that she disciplined the children, defendant was informed that she would be charged with felonious child abuse and possibly murder. Defendant began to cry; she then stated that the night before Sean died, she wrapped him in three blankets, very tightly. Defendant was indicted on charges of felony child abuse inflicting serious injury and first-degree murder.

The State filed a pre-trial notice of intent to introduce 404(b) evidence that defendant engaged in continual and systematic abuse of Tammy, Jasmine, Randy, Karen, Dan, and Hailey. Defendant contested

---

1. With the exception of the deceased child, Sean, pseudonyms have been used to replace the true names of the children.

this, but in an order filed 6 June 2008, the trial court denied defendant's motion to exclude the 404(b) evidence concluding it was "relevant to show (1) a common plan, scheme, system or design by the defendant to inflict cruel suffering upon the victims for the purpose of punishment, persuasion, and sadistic pleasure, (2) motive, (3) malice, (4) intent, and lack of accident."[2]

At trial, the State presented evidence from defendant's surviving children: Jasmine, defendant's step-daughter, was twenty years old at the time of trial; Toni, adopted in 1996 at the age of nine and at the time of trial was twenty-one; Randy, adopted in 1998 at the age of seven and at the time of trial was seventeen; Karen, adopted in 2003 and was eleven at the time of trial; and Hailey and Dan, adopted in 2005, at the time of trial, were nine and eleven, respectively. In sum, the children testified to numerous acts of abuse by defendant directed toward them that increased in frequency and severity from the first adoption to the time of Sean's death.

Dr. Sharon Cooper testified as an expert in the field of developmental and forensic pediatrics. Based upon her examination, Dr. Cooper testified that the children were subjected to sadistic abuse, torture, and ritualistic abuse.

Defendant testified in her own defense and admitted that one of the ways in which she disciplined the children was by hitting them. Defendant also testified to various methods of discipline, such as: having the children jump up and down on a "rebounder," a small trampoline, to "run off some nervous energy"; forcing a child to ingest vomit; and making the children sit facing the wall for periods of time each day. On the night Sean died, defendant described wrapping him up to his neck in three blankets, and securing the blankets tighter than she had on previous occasions.

---

2. In its order denying defendant's motion to exclude the testimony of defendant's surviving children, the trial court made the following findings of fact:

4. The 404(b) testimony of Jasmine Paddock, Randy Paddock, and Toni Paddock revealed a pattern, [sic] of child abuse committed by the defendant against Jasmine Paddock, Toni Paddock, Randy Paddock, Karen Paddock, Hailey Paddock, [Dan Paddock] and Sean Paddock continuously over a period of sixteen years.

. . .

6. The prior acts of abuse committed by the defendant against Jasmine Paddock, Toni Paddock, Randy Paddock, Karen Paddock, Dan Paddock, Hailey Paddock, are sufficiently similar to the abuse committed by the defendant against Sean Paddock.

Following the close of the evidence, the jury found defendant guilty of felony child abuse inflicting serious bodily injury and first-degree murder under the felony murder rule based on murder by torture. The trial court entered judgment in accordance with the jury verdicts and sentenced defendant to seventy-three to ninety-seven months for felony child abuse and life without parole for first-degree murder. Defendant appeals.

---

On appeal, defendant raises the following two questions: did the trial court err by admitting (I) evidence that defendant abused her adopted children over the course of a decade; and (II) testimony that Sean Paddock died from fatal child homicide, and that the four youngest children were the victims of ritualistic and sadistic child abuse and torture.

*I*

**[1]** First, defendant argues the trial court erred in admitting evidence of defendant's abuse of all her surviving children. Defendant contends that such evidence served only to establish bad character, was dissimilar to the acts which resulted in the death of Sean Paddock, and was too remote in time to be admissible under Rules of Evidence 404 and 403. We disagree.

Under our Rules of Evidence, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . ." N.C. R. Evid. 404(a) (2009). However, under Rule 404(b) "[e]vidence of other crimes, wrongs, or acts . . . [may] be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. R. Evid. 404(b) (2009).

> Rule 404(b) state[s] a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

> Evidence of other [bad acts] committed by a defendant may be admissible under Rule 404(b) if it establishes the chain of circumstances or context of the charged crime. Such evidence is

admissible if the evidence of other [bad acts] serves to enhance the natural development of the facts or is necessary to complete the story of the charged crime for the jury.

*State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 853 (1995) (internal citations omitted). If a trial court determines "the evidence is admissible under Rule 404(b), the court must still decide whether there exists a danger that unfair prejudice substantially outweighs the probative value of the evidence." *State v. Stevenson*, 169 N.C. App. 797, 800, 611 S.E.2d 206, 209 (2005) (citing N.C. R. Evid. 403 (2003). We review a trial court's determination to admit evidence under Rules 404(b) and 403 for abuse of discretion. *See State v. Lofton*, 193 N.C. App. 364, 373, 667 S.E.2d 317, 323 (2008) (reviewing evidence admitted under Rule 403); *State v. Aldridge*, 139 N.C. App. 706, 714, 534 S.E.2d 629, 635 (2000) (reviewing evidence admitted under Rule 404(b)).

Defendant acknowledges that when a person is charged with felonious child abuse, prior acts of violence alleged to have been committed by the defendant against the victim have been held to be admissible under Rule 404(b) as evidence of the defendant's intent to cause injury to the victim. However, defendant argues that because the jury was allowed to also consider acts of violence perpetrated by defendant upon her surviving step-child and adopted children, the trial court violated Rule 404(b) by admitting evidence too dissimilar to the acts of violence perpetrated only upon Sean Paddock. We disagree.

In *State v. Anderson*, 350 N.C. 152, 513 S.E.2d 296 (1999), an unconscious two-and-a-half year old girl was brought to Wilkes Regional Medical Center covered with bruises, grab marks, pinch marks, scratches, bite marks, and other injuries. The child died the next day. *Id.* at 160, 513 S.E.2d at 301-02. The defendant, the girlfriend of the child's uncle, was indicted for first-degree murder and felonious child abuse. *Id.* at 158, 513 S.E.2d at 301. After a *voir dire* to determine the admissibility of evidence of other acts of violence, two witnesses, one of whom was defendant's neighbor, testified regarding defendant's excessive disciplining of her own children. *Id.* at 173, 513 S.E.2d at 309. The testimony revealed that the defendant disciplined her own daughter by hitting her with a belt and disciplined her own son by biting him "real hard." *Id.* Abrasions on the victim's body were matched to the defendant's belt and the defendant's dental impressions. *Id.* at 173, 513 S.E.2d at 309. The defendant was convicted of felonious

child abuse and first-degree murder on the basis of malice, premeditation and deliberation; torture; and the felony murder rule. *Id.* at 158, 513 S.E.2d at 301. On appeal, the defendant argued that the evidence introduced by the two witnesses was not admissible for any purpose. Our Supreme Court disagreed, acknowledging that the State introduced the evidence to establish identity, plan, and absence of mistake, and declaring that all were proper purposes under Rule 404(b) and therefore "relevant in determining whether [the] defendant committed felonious child abuse and first-degree murder . . . ." *Id.* at 174, 513 S.E.2d 310.

In the instant case, the State gave pre-trial notice of its intent to introduce 404(b) evidence that defendant engaged in continual and systematic abuse of Toni, Jasmine, Randy, Karen, Dan, and Hailey. After hearing the *voir dire* testimony of Jasmine, Randy, and Toni, the trial court denied defendant's motion to exclude the testimony of defendant's surviving children, finding and concluding that the evidence revealed a pattern of abuse committed upon the Paddock children that was sufficiently similar to the abuse committed by defendant upon Sean Paddock, and that such evidence was relevant to show "(1) a common plan, scheme, system or design by the defendant to inflict cruel suffering upon the victims for the purpose of punishment, persuasion, and sadistic pleasure, (2) motive, (3) malice, (4) intent, and lack of accident."

The trial testimony of defendant's surviving children illustrated how defendant sought to control their behavior with daily routines and a pattern of corporal punishment that became more severe with each adoption and escalated significantly in the months prior to Sean's death. Prior to the adoption of Karen, defendant experimented with a form of child rearing referred to as "tomato staking," in which she kept all of her children right next to her so that she could observe them at all times. After the three youngest were adopted, "[i]t got much, much worse": "[they] weren't allowed to eat breakfast"; "weren't allowed to talk"; "[were made to] eat[] on the floor"; and "lost the privilege of being able to get up and walk to the bathroom when [they] had to go." Defendant "became more cold and calculated. She planned everything she did." Defendant's younger and most recently adopted children each testified to being hit with a spoon, switch, belt, or PVC pipe every day, as well as a daily routine requiring them to sit at an assigned place on the floor with their knees touching a wall for hours at a time. Additional instances of abuse involved defendant forcing a child to ingest vomit and fecal matter,

placing duct tape over a child's nose and mouth suffocating her, and confining a child to bed for at least four days without food.[3]

In the months before Sean died defendant began to wrap eight year old Karen at night to keep her still. Karen was bound with her arms by her side and her legs together; defendant then further immobilized her by placing a shelf over Karen's legs so that she could not roll over. When three year old Sean was found playing in bed, defendant began binding him, also. On Saturday, 25 February 2006, defendant immobilized Sean up to his neck in three blankets, constricting him to such a degree that he was unable to breathe, ultimately causing his death. The trial court admitted this evidence to show defendant's intent, plan, scheme, system or design to inflict cruel suffering, as well as malice and lack of accident. We hold the trial court did not err in admitting the evidence for the purposes stated, pursuant to Rule 404(b).

We next consider whether the admission of evidence under Rule 404(b) violated Rule 403. Under Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." N.C. R. Evid. 403 (2009). "Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56 (citation omitted). " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." Commentary, N.C. R. Evid. 403 (2009); *see also State v. DeLeonardo*, 315 N.C. 762, 772, 340 S.E.2d 350, 357 (1986). Where evidence of prior conduct is relevant to an issue other than the defendant's propensity to commit the charged offense, "the rule of inclusion [under Rule 404(b)] is constrained by the requirements of similarity and temporal proximity." *State v. al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002) (citations omitted). "The determination of similarity and remoteness is made on a case-by-case basis, and the required degree of similarity is that which results in the jury's reasonable inference that the defendant committed both the prior and present acts. The similarities need not be unique and bizarre." *State v. Stevenson*, 169 N.C. App. 797, 800, 611 S.E.2d 206, 209 (2005) (internal citations and quotations omitted).

---

3. Testimony from the emergency room physician who examined Dan on 26 February 2006 showed that Dan appeared malnourished—"significantly more thin than you would expect" and exhibiting symptoms consistent with deficiencies in Vitamin K, Vitamin C, zinc, and "a few of the minerals that are in your basic diet."

> Remoteness in time is most important where evidence of another [bad act] is used to show that both [acts] arose out of a common scheme or plan: Remoteness in time is less important when the other [bad act] is admitted because its *modus operandi* is so strikingly similar to the *modus operandi* of the crime being tried as to permit a reasonable inference that the same person committed both crimes.

*State v. Schultz*, 88 N.C. App. 197, 203, 362 S.E.2d 853, 857 (1987) (citation omitted). The determination to admit evidence under Rule 403 "is within the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision." *Stevenson*, 169 N.C. App. at 800-01, 611 S.E.2d at 209 (citation omitted).

In its order entered 6 June 2008, the trial court made the following findings of fact:

> 9. The probative value of the 404(b) evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; the 404(b) evidence is more probative than prejudicial.
>
> 10. The 404(b) incidents are sufficiently similar and are not too remote in time.

Upon review of the evidence of record, we hold that the trial court did not abuse its discretion in allowing evidence of defendant's other acts of violence as they were sufficiently similar to the abuse committed by defendant which lead to Sean's death, and it was relevant for the purposes stated by the trial court. Accordingly, we overrule defendant's argument.

## II

**[2]** Next, defendant argues that the trial court erred by allowing Dr. Sharon Cooper to testify that Sean Paddock, along with Hailey, Karen, and Dan Paddock, was the victim of ritualistic child abuse, sadistic child abuse, and torture. Defendant contends that Dr. Cooper's testimony amounted to inadmissible opinion testimony on the credibility of the juveniles and that Dr. Cooper's use of the word "torture" was potentially misleading because it differed from the legal definition. We disagree.

Under our Rules of Evidence "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the

evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. R. Evid. 702(a) (2009). However, "our appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence." *State v. Grover*, 142 N.C. App. 411, 418, 543 S.E.2d 179, 183 (2001) (citation omitted). "Opinion testimony may be received regarding the underlying factual premise, which the fact finder must consider in determining the legal conclusion to be drawn therefrom, but may not be offered as to whether the legal conclusion should be drawn." *Norris v. Zambito*, 135 N.C. App. 288, 292, 520 S.E.2d 113, 116 (1999) (citation and emphasis omitted). "Expert testimony as to a legal conclusion or standard is inadmissible, however, at least where the standard is a legal term of art which carries a specific legal meaning not readily apparent to the expert witness." *State v. Murphy*, 172 N.C. App. 734, 739, 616 S.E.2d 567, 571 (2005) (citing *State v. Jennings*, 333 N.C. 579, 598, 430 S.E.2d 188, 196, *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602, 114 S. Ct. 644 (1993)), *vacated in part and remanded on separate issue*, 361 N.C. 164, —— S.E.2d —— (2006).

> [T]he term "torture" is not a legal term of art which carries a specific meaning not readily apparent to the witness. "Torture" does not denote a criminal offense in North Carolina and therefore does not carry a precise legal definition, as "murder" and "rape" do, involving elements of intent as well as acts.

*State v. Jennings*, 333 N.C. at 599, 430 S.E.2d at 197. "[A] trial court is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony. The trial court's decision regarding what expert testimony to admit will be reversed only for an abuse of discretion." *State v. Alderson*, 173 N.C. App. 344, 350, 618 S.E.2d 844, 848 (2005) (internal quotations and citations omitted).

Here, Dr. Cooper testified that she reviewed the following: photographs taken of Sean and the remaining Paddock children on the day of Sean Paddock's death; reports made by the guardian *ad litem*; the emergency room records and medical evaluation assessment made after the examinations of Hailey, Dan, and Randy, as well as the investigative reports by law enforcement; the interviews of Jasmine and Toni Paddock by the State Bureau of Investigation; and the history of the surviving Paddock children taken by Dr. Cooper, herself in November 2007 and April 2008. Based on this data, Dr. Cooper testi-

fied that she found the histories of the older children—Randy, Toni, and Jasmine—very consistent as eyewitnesses to what the younger children described as their experiences. Dr. Cooper further testified to the nature of ritualistic abuse, sadistic abuse, and torture: torture occurs when a person "takes total control and totally dominates a person's behavior and most the [sic] basic of behaviors are taken control of. Those basic behaviors are eating, eliminating and sleeping. Those are the three more common behaviors that a person will take total control of." As an example of torture, Dr. Cooper described the act of binding a child at night, placing duct tape over his or her mouth, and then placing furniture atop the child for the purpose of immobilization. Dr. Cooper stated that she was not testifying to a legal definition of torture but was defining the term based on her medical expertise. Dr. Cooper testified that Hailey suffered from sadistic abuse and torture; Karen suffered from sadistic abuse, ritualistic abuse, and torture; and Dan suffered from sadistic abuse and torture. The jury was instructed to consider Dr. Cooper's testimony for the limited purpose of evidence admitted under Rule 404(b). After the close of the evidence, the trial court instructed the jury that torture was a "course of conduct by one who intentionally inflicts grievous pain and suffering upon another for the purpose of punishment, persuasion or sadistic pleasure."

We hold that Dr. Cooper's testimony did not amount to inadmissible opinion testimony on the credibility of the Paddock children. *See Norris*, 135 N.C. App. at 292, 520 S.E.2d at 116 (holding that opinion testimony may be received regarding an underlying factual premise but may not be offered as to whether a legal conclusion should be drawn). We hold that the trial court's admission of Dr. Cooper's testimony regarding the use of the word "torture" was not an abuse of discretion. *See Jennings*, 333 N.C. at 599, 430 S.E.2d at 197 ("the term 'torture' is not a legal term of art which carries a specific meaning not readily apparent to the witness."). Accordingly, we overrule defendant's argument.

No error.

Judges ELMORE concur and STROUD concur.