STATE OF NORTH CAROLINA v. MARTAVIOUS SANTONIO CURRY, DEFENDANT

No. COA09-547

(Filed 20 April 2010)

## 1. Homicide— felony murder—merger—conviction arrested— sentence imposed not prejudicial

The trial court erred by not merging Defendant's robbery conviction into his conviction for first-degree murder and defendant's robbery conviction was arrested. However, defendant was not prejudiced as the felony upon which defendant's murder conviction was based was the robbery and the trial court consolidated the two convictions and imposed a life sentence, which was required for the murder conviction.

## 2. Sentencing— discharging a firearm into an occupied dwelling—clerical no error

The trial court did not err in sentencing defendant for a Class D rather than a Class E felony for his conviction of discharging a firearm into occupied property. The terms "dwelling" and "residence" are synonymous in the context of this case and the indictment and the jury instructions were sufficient to charge defendant with a Class D felony under N.C.G.S. § 14-34.1(b). Defendant's judgment was remanded for correction of a clerical error.

## 3. Appeal and Error— preservation of issues—failure to raise issue of fatal variance at trial

Defendant failed to argue a variance between his indictment for possession of a firearm and the evidence presented at trial or even to argue generally the sufficiency of the evidence regarding the type of firearm or weapon possessed to the trial court. Thus, he waived this issue for appeal.

## 4. Appeal and Error— preservation of issues—failure to object and move to strike

Defendant's argument that the trial court erred in admitting certain testimony into evidence was overruled. Defendant waived his objection to certain testimony by objecting to the testimony only after it was given and failing to make a motion to strike.

STATE v. CURRY

[203 N.C. App. 375 (2010)]

### 5. Appeal and Error— preservation of issues—failure to include order in record on appal—failure to object

Defendant's contention that the trial court erred in admitting testimony that defendant had been on probation was overruled where the sole argument on appeal was based on an alleged order by the trial court which was not included in the record on appeal. Defendant also failed to object to the testimony at trial on the basis that it was beyond the scope permitted by the trial court's earlier ruling.

### 6. Evidence— prior crimes or bad acts—not plain error

The trial court did not commit plain error in allowing into evidence testimony that defendant had been incarcerated shortly before the shooting and was on probation because the State presented substantial evidence of the crimes charged in this case and even if the testimony was erroneously admitted, defendant failed to show that the jury probably would have reached a different result had the error not occurred.

### 7. Appeal and Error— preservation of issues—failure to object to evidence at trial

Defendant failed to timely object to the admission of certain evidence at trial and failed to argue plain error on appeal. Defendant thus failed to preserve for appellate review issues concerning the admission of evidence.

### 8. Evidence— hearsay—not plain error

Even assuming *arguendo* that the trial court erred in allowing into evidence hearsay testimony regarding defendant's pre-trial identification in a photographic lineup, in light of the State's evidence the jury probably would not have reached a different result had the error not occurred.

### 9. Homicide— felony murder—sufficient evidence—motion to dismiss properly granted

The trial court did not err by denying defendant's motion to dismiss robbery and murder charges as the State presented sufficient evidence of each element of the crimes.

Judge BEASLEY concurs with separate opinion.

Appeal by defendant from judgments entered on or about 29 May 2008 by Judge David S. Cayer in Superior Court, Cleveland County. Heard in the Court of Appeals 15 October 2009.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Ronald M. Marquette, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

STROUD, Judge.

Defendant was convicted by a jury of first degree murder, discharging a firearm into occupied property, possession of a firearm by a felon, and robbery with a dangerous weapon. Defendant appeals on numerous grounds. For the following reasons, we arrest judgment on defendant's sentence for robbery with a dangerous weapon, remand as to defendant's judgment for discharging a firearm into occupied property for correction of a clerical error, and otherwise find no prejudicial error.

## I. Background

The State's evidence tended to show that on 5 December 2006, defendant told his friend, Montrell Archie, that "he needed somebody to rob" because he had no money. Mr. Archie informed defendant he did not know of anyone, and defendant asked about Durrell Petty, an individual from whom Mr. Archie purchased his illegal drugs. Defendant and Mr. Archie decided they would commit a robbery that evening but changed their minds as they did not have a gun. Mr. Archie spent the night at his girlfriend's house, and defendant stayed at Mr. Archie's grandmother's house. On the morning of 6 December 2006, Mr. Archie drove to his grandmother's house and picked up defendant. Mr. Archie and defendant got an SKS rifle, and the two formulated a plan on "how to do the robbery[.]" Mr. Archie drove defendant to an area near Mr. Petty's house and dropped him off so that "it look[ed] like [Mr. Archie] didn't know what was going on[.]" Mr. Archie then drove to Mr. Petty's house and purchased some drugs from Mr. Petty. While at Mr. Petty's house, Mr. Archie saw defendant "come up on the car porch." Mr. Petty ran, and defendant fired a gun. Ms. McSwain, Mr. Petty's girlfriend, was also at the house with Mr. Archie and Mr. Petty. When Ms. McSwain heard the gunshot, she ran. At the time of the shooting, Ms. McSwain owned a pocketbook which contained money and her identification. During the shooting, Mr. Archie hid in the pantry and "continued hearing shots." Defendant "opened the pantry and pointed the gun" at Mr. Archie, asking where Mr. Petty was and telling Mr. Archie to search the house. Mr. Archie found Mr. Petty, who had already been shot, in the bedroom and "it

didn't look like he was alive[.]" Mr. Archie then took a 9 millimeter handgun from Mr. Petty.

Sergeant Dan Snellings of the Cleveland County Sheriff's Office reported to the crime scene and later went to a nearby unoccupied residence. At the vacant residence law enforcement personnel recovered an SKS rifle and a purse which contained Ms. McSwain's identification. Defendant was indicted for murder, discharging a firearm into occupied property, possession of a firearm by a convicted felon, and robbery with a dangerous weapon. Defendant was convicted by a jury on all charges. The trial court determined that defendant had a prior record level of two and sentenced him to life imprisonment without parole on his consolidated convictions for murder and robbery with a dangerous weapon. Defendant was also sentenced to 77 to 102 months for discharging a firearm into occupied property and 15 to 18 months for possession of a firearm by a convicted felon. Defendant appeals on numerous grounds. For the following reasons, we arrest judgment on defendant's sentence for robbery with a dangerous weapon, remand as to defendant's judgment for discharging a firearm into occupied property for correction of a clerical error, and otherwise find no prejudicial error.

## II. Merger

**[1]** Defendant first argues that pursuant to *State v. Weeks*, 322 N.C. 152, 367 S.E.2d 895 (1988), his robbery conviction merged into his murder conviction, and thus the trial court erred in not arresting judgment as to his robbery conviction; the State agrees with defendant on this contention. However, defendant also argues that due to this error and pursuant to *State v. Wortham*, 318 N.C. 669, 351 S.E.2d 294 (1987), his "murder case must be remanded for entry of proper judgment." The State contends that defendant's "sentence imposed for the felony murder was not possibly enhanced by the robbery conviction and a remand would be pointless. Instead this Court should follow the practice in *State v. Goldston*, 343 N.C. 501, 471 S.E.2d 412 (1996)[.]"

Whether to arrest judgment is a question of law, and "[q]uestions of law are reviewed *de novo* on appeal." *Metcalf v. Black Dog Realty, LLC*, —— N.C. App. ——, ——, 684 S.E.2d 709, 720 (2009) (citation omitted).

*Wortham* states:

Since it is probable that a defendant's conviction for two or more offenses influences adversely to him the trial court's judgment on

STATE v. CURRY

[203 N.C. App. 375 (2010)]

the length of the sentence to be imposed when these offenses are consolidated for judgment, we think the better procedure is to remand for resentencing when one or more but not all of the convictions consolidated for judgment has been vacated.

*Wortham* at 674, 351 S.E.2d at 297. Thus, *Wortham's* analysis would apply in cases where "a defendant's conviction for two or more offenses influences adversely to him the trial court's judgment on the length of the sentence to be imposed[.]" *Id.* However, here, as in *Goldston*, we do not find that to be the case:

The felony upon which the first-degree murder conviction was based in this case was the attempted robbery with a firearm. The jury did not convict the defendant based on premeditation and deliberation, and the attempted robbery conviction merged into the felony murder conviction. Therefore, judgment should have been arrested on the attempted robbery with a firearm conviction. The court consolidated the murder and attempted robbery with a firearm convictions and imposed a life sentence, which was required for the murder conviction. The defendant was thus not prejudiced by this consolidation. Accordingly, we arrest judgment on the sentence for attempted robbery with a firearm and do not disturb the sentence for felony murder.

*Goldston* at 504, 471 S.E.2d at 414 (citation omitted). As our facts are virtually the same as in *Goldston* and defendant did not receive a harsher punishment based upon the error, we too "arrest judgment on the sentence for . . . robbery with a firearm and do not disturb the sentence for felony murder." *Id.*

### III. Sentencing

[2] Defendant next contends that "the existing judgment must be vacated and the case remanded for a new entry of judgment and sentencing hearing because the Trial Court erroneously entered judgment and sentenced on the conviction [of discharging a firearm into occupied property] as a Class D rather than a Class E felony." Defendant directs our attention to alleged errors in his indictment, the jury instructions, the verdict sheet, the trial court's statements during sentencing, and the judgment itself in support of his contention that he should have been sentenced on a Class E felony instead of a Class D felony.

In order to determine the proper standard of review, it is important to note the basis of defendant's argument. Defendant *did not*

assign nor argue error as to the indictment, the jury instructions, the verdict sheet or the trial court's statement, but merely uses them in support of his argument that the trial court sentenced him improperly. Defendant is *not* arguing that his indictment was insufficient, that the jury instructions were improper, that the verdict sheet was deficient or that the trial court's statement was prejudicial, nor could he do so, as he failed to assign as error or argue these issues. Defendant is attacking only his *sentencing*.

"When a defendant assigns error to the sentence imposed by the trial court our standard of review is whether the sentence is supported by evidence introduced at the trial and sentencing hearing." *State v. Chivers*, 180 N.C. App. 275, 278, 636 S.E.2d 590, 593 (2006) (citation and brackets omitted), *disc. review denied*, 361 N.C. 222, 642 S.E.2d 709 (2007). N.C. Gen. Stat. § 14-34.1 provides:

> (a) Any person who willfully or wantonly discharges or attempts to discharge any firearm or barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class E felony.

> (b) A person who willfully or wantonly discharges a weapon described in subsection (a) of this section into an occupied dwelling or into any occupied vehicle, aircraft, watercraft, or other conveyance that is in operation is guilty of a Class D felony.

> (c) If a person violates this section and the violation results in serious bodily injury to any person, the person is guilty of a Class C felony.

N.C. Gen. Stat. § 14-34.1 (2005).

A. Indictment

We first turn to defendant's indictment, which defendant contends supports his argument that he should have been sentenced as a Class E felon. Defendant was indicted for "[d]ischarging a firearm into occupied property" pursuant to N.C. Gen. Stat. § 14-34.1. The indictment identified the crime charged as a class E felony, although the grand jury specifically found that defendant "unlawfully, willfully and feloniously did wantonly discharge a firearm into a *residence* located at 6035 Deep Green Drive, Shelby, North Carolina, and said property being occupied when the weapon was discharged."

Discharge of a weapon into a "building" or "structure" while it is occupied is a Class E felony pursuant to N.C. Gen. Stat. § 14-34.1(a), but discharge of a weapon into a "dwelling" while it is occupied is a class D felony pursuant to N.C. Gen. Stat. § 14-34.1(b). *See id.* Defendant argues that because the indictment alleges that he discharged the weapon into an occupied "residence" rather than a "dwelling," the indictment did not charge him with a Class D felony and he is entitled to resentencing upon a Class E felony. We disagree.

"[A]n indictment is sufficient if it charges the substance of the offense, puts the defendant on notice of the crime, and alleges all essential elements of the crime." *State v. Bollinger*, 192 N.C. App. 241, 246, 665 S.E.2d 136, 139 (2008) (citation omitted), *aff'd per curiam*, 363 N.C. 251, 675 S.E.2d 333 (2009). "Even though [a] statutory reference [is] incorrect, the body of the indictment [may be] sufficient to properly charge a violation. The mere fact that the wrong statutory reference was used does not constitute a fatal defect as to the validity of the indictment." *State v. Jones*, 110 N.C. App. 289, 291, 429 S.E.2d 410, 412 (1993). The elements of discharging a firearm into occupied property "are (1) willfully and wantonly discharging (2) a firearm (3) into property (4) while it is occupied." *State v. Hagans*, 188 N.C. App. 799, 804, 656 S.E.2d 704, 707 (citations and quotation marks omitted), *disc. review denied*, 362 N.C. 511, 668 S.E.2d 344 (2008).

Here, the offense was listed as "[d]ischarging a firearm into occupied property" and the description on the indictment was for "[(1)] wantonly discharg[ing] [(2)] a firearm [(3)] into a residence located at 6035 Deep Green Drive, Shelby, North Carolina, and [(4)] said property being occupied when the weapon was discharged." *See id.* The grand jury alleged that defendant fired into occupied property which was a "residence." The word "residence" is not used in either N.C. Gen. Stat. § 14-34.1(a) or (b). However, *State v. Jones*, 188 N.C. App. 562, 655 S.E.2d 915 (2008) refers to a "dwelling house" or a "residence" numerous times, indicating that the words are interchangeable. *Jones*, 188 at 564-68, 655 S.E.2d at 917-19. Black's Law Dictionary defines a "dwelling-house" as "[t]he house or other structure in which a person lives; a *residence* or abode." Black's Law Dictionary 582 (9th ed. 2009) (emphasis added). "Residence" has also been defined as "a building used as a home: DWELLING[.]" Merriam-Webster's Collegiate Dictionary 1060 (11th ed. 2005). Furthermore, N.C. Gen. Stat. § 14-277.4A, also located in Chapter 14, the criminal law chapter of the North Carolina General Statutes, defines "resi-

dence" as "any single-family or multifamily *dwelling* unit that is not being used as a targeted occupant's sole place of business or as a place of public meeting." N.C. Gen. Stat. § 14-277.4A(a)(1) (2009) (emphasis added). Thus, we conclude that the term "residence" as used in the indictment was synonymous with "dwelling" as used in N.C. Gen. Stat. § 14-34.1(b). Though the crime was listed as a Class E felony on defendant's indictment, the specific description of the crime put defendant on notice that the crime charged was actually a Class D felony under N.C. Gen. Stat. § 14-34.1(b). The indictment was clearly sufficient to enable defendant to prepare for trial. *See State v. Farrar*, 361 N.C. 675, 678, 651 S.E.2d 865, 866-67 (2007) ("[T]he primary purpose of the indictment is to enable the accused to prepare for trial." (citation and quotation marks omitted)). Also, as noted above, even where a "statutory reference [is] incorrect, the body of the indictment [may be] sufficient to properly charge a violation." *Jones*, 110 N.C. App. at 291, 429 S.E.2d at 412. Because the term "residence" is synonymous with the term "dwelling" as used in N.C. Gen. Stat. § 14-34.1(b), the body of the indictment charged defendant with a Class D felony pursuant to N.C. Gen. Stat. § 14-34.1(b). *See* N.C. Gen. Stat. § 14-34.1(b). The erroneous reference on the indictment to a Class E felony therefore does not support defendant's argument that he was improperly sentenced.

## B.  Jury Instructions

Defendant next argues that "[t]he jury instructions on the offense consistently used the word 'residence' and charged an essential element was discharging a firearm 'into the residence' on Deep Green Drive" while the jury instruction should have referred to a "dwelling" instead. However, as discussed above, we find that the terms "dwelling" and "residence" are synonymous in this context, and thus the trial court did not err by sentencing defendant for a Class D felony pursuant to N.C. Gen. Stat. § 14-34.1(b).

## C.  Verdict Sheet

Defendant also argues that he should have been sentenced to a Class E felony instead of a Class D felony based upon the verdict sheet. On the verdict sheet, the jury found defendant "guilty of discharging a firearm into occupied property[.]" (Original in all caps.) The only other option on the verdict sheet was "NOT GUILTY[.]" However, the wording of the verdict sheet does not change our analysis as stated above. "[T]he function of the jury during the guilt phase is to determine the guilt or innocence of the defendant, not to be con-

cerned about the defendant's penalty[.]" *State v. Brown*, 177 N.C. App. 177, 189, 628 S.E.2d 787, 794 (2006) (citation, quotation marks, and brackets omitted). Here, defendant argues only that the penalty was improper, not the jury's verdict itself. In the context of the indictment and jury instructions as noted above, the fact that the verdict sheet referred to an "occupied property" does not raise any question about whether the jury properly performed its function. The jury made the factual determination as to the defendant's guilt; the trial court properly determined the penalty pursuant to N.C. Gen. Stat. § 14-34.1(b).

## D. Trial Court's Statements

During sentencing the trial court stated, "On a discharging a firearm into occupied dwelling, he's Class *E*, Level 2, I'll impose a minimum of 77 and a maximum of 102 months in the Department of Correction[]. Here, it is clear that the trial court simply misspoke as to the class of the felony. First, the trial court noted defendant was being sentenced for "discharging a firearm into occupied *dwelling*," which is the language used in N.C. Gen. Stat. § 14-34.1(b). *See* N.C. Gen. Stat. § 14-34.1(b). Second, the trial court imposed "a minimum of 77 and a maximum of 102 months in the Department of Correction[]." The range of 77 to 102 months falls only within the minimum and maximum range for a Class D offense. *See* N.C. Gen. Stat. § 15A-1340.17 (c), (e) (2005). For a Class E felony the maximum sentence defendant could have received is 44 months. *See* N.C. Gen. Stat. § 15A-1340.17(e). Thus, the trial court was clearly referring to a Class D offense, though he erroneously stated "Class E[.]"

## E. Judgment

Lastly, on the "JUDGMENT AND COMMITMENT ACTIVE PUNISHMENT FELONY" sheet, the trial court described the offense as "DISCHARGE WEAPON OCCUPIED PROP" noting that it was pursuant to N.C. Gen. Stat. § 14-34.1(a) and was a Class D offense. Here it appears that the trial court made a typographical error, as a violation of N.C. Gen. Stat. § 14-34.1(a) is a Class E offense, and a violation of N.C. Gen. Stat. § 14-34.1(b) is a Class D offense. The trial court sentenced defendant to 77 to 102 months imprisonment, which is consistent with a class D offense. *See* N.C. Gen. Stat. § 15A-1340.17 (c), (e).

"A clerical error is an error resulting from a minor mistake or inadvertence, especially in writing or copying something on the record, and not from judicial reasoning or determination." *In re D.D.J.*, 177 N.C. App. 441, 444, 628 S.E.2d 808, 811 (2006) (citation,

quotation marks, and brackets omitted). "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record 'speak the truth." *State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) (citation and quotation marks omitted).

On the judgment, the trial court noted that defendant was being sentenced for a Class D offense, and then sentenced defendant accordingly. Therefore, the trial court's reference to subsection (a) of N.C. Gen. Stat. § 14-34.1 was merely a "clerical error" and did not affect the sentencing defendant received. We remand defendant's judgment for discharging a weapon into occupied property for correction of this clerical error. *See id.*

IV. Indictment

**[3]** Defendant next contends that his "possession of a firearm conviction must be vacated because there is a fatal variance between the indictment and the evidence concerning the type of weapon possessed under *State v. Langley*, 173 N.C. App. 194, 618 S.E.2d 253 (2005)[.]" The State contends that defendant has waived this argument by failing to properly raise this issue in the trial court below. Defendant counters that "[i]t is black letter law in North Carolina that a defendant 'may raise the question of variance between the indictment and the proof by a motion of nonsuit.' *State v. Skinner*, 162 N.C. App. 434, 446, 590 S.E.2d 876, 885 (2004)." We agree that "defendant may raise the question of variance between the indictment and the proof by a motion" to dismiss, but defendant must also state this at trial as the grounds for the motion to dismiss. *See State v. Skinner*, 162 N.C. App. 434, 446, 590 S.E.2d 876, 885 (2004). In *State v. Skinner*, the sentence following the one quoted in defendant's brief is: "the defendant moved to dismiss the assault charge *on this ground* at the close of the State's evidence and renewed his motion at the close of all the evidence." *Id.* (emphasis added). "[O]n this ground" is obviously referring to the "variance between the indictment and the proof" presented at trial. *Id.* In the case *sub judice*, defendant's motion to dismiss after the close of the State's evidence was not based upon the indictment. Instead, as to the charge for possession of a firearm by a felon, defense counsel argued that the State's evidence of defendant's prior felony conviction was insufficient. Over approximately a one page argument of the transcript, defendant's argument regarding this conviction was:

At this point, what I would ask The Court to consider the firearm by a felon charge, Your Honor. At this point, the only evidence before The Court is Ms. Pharr's testimony from the probation file that he was charged with assault with a deadly weapon inflicting serious injury. There is no substantiating court documentation from the clerk's office, the A.O.C., the Department of Corrections, anything of that nature, just her statement blankly, not even clarifying what level or what type of charge it is, just that he was placed on probation for it.

In 15(a)1340.14, Your Honor, that's the prior record level sentencing section of the North Carolina General Statutes. Subsection (e), or excuse me, subsection 7(e), states that and discusses—or subsection (f), section (f), excuse me, proof of prior convictions. And it specifies that the methods of proving prior convictions, stipulation of the parties, an original copy of the court record of the prior conviction, court records maintained by a division of criminal information, the Department of Motor Vehicles or the Administrative Office of the Court. There's a catchall provision at the end, and I'll simply say at this point that that type of documentation is not before The Court. It's just a statement from a probation officer as to the underlying charge that he was placed on probation for.

I would say, Your Honor, that that is not sufficient to go forward on that case at this point, and ask you to dismiss that charge. I'll ask you to dismiss all the charges without any further argument, and ask you to dismiss that charge based on that argument, Your Honor.

At the close of all of the evidence defendant stated,

. . . At the close of all the evidence, Your Honor, I would renew my motions to dismiss, again, as far as the murder, robbery and discharging a weapon charge, based on the insufficiency of the evidence. And as far as the firearm by a felon charge, again, my recollection is—my recollection, I have it in my notes that Ms. Pharr mentioned that it was a felony charge. I do not wish to be heard any further, Your Honor.

As defendant failed to argue a variance between his indictment and the evidence presented at trial or even to argue generally the sufficiency of the evidence regarding the type of firearm or weapon possessed to the trial court, he has waived this issue for appeal. *See*

N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."); *State v. Tellez,* —— N.C. App. ——, ——, 684 S.E.2d 733, 736 (2009) ("It is well-established that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." (citations and quotation marks omitted)); *see also State v. Baldwin,* 117 N.C. App. 713, 717, 453 S.E.2d 193, 195 ("Defendant moved to dismiss the habitual felon charge based upon double jeopardy and not based upon a variance between the indictment and proof. Defendant waived his right to raise this issue by failing to raise the issue at trial. N.C.R. App. P. 10(b)(1). We therefore decline to address the issue."), *cert. denied,* 341 N.C. 653, 462 S.E.2d 518 (1995). This argument is overruled.

### V. Evidentiary Issues

Defendant's next five arguments concern evidence that the trial court admitted about him through various witnesses.

### A. Montrell Archie's Testimony

**[4]** Defendant first directs our attention to Mr. Archie's testimony:

Q. Okay. While you and Martavious Curry were becoming friends, what type of activities did you all participate in? And I'm talking about such as playing cards, going to the movies, generally, what types of things did you all do together to become friends?

A. We just hung out. You know what I'm saying? Just hang out, sell drugs.

MR. ANTHONY: Objection.

THE COURT: Overruled.

MR. YOUNG: I did not hear The Court's ruling.

THE COURT: Overruled.

MR. YOUNG: Okay.

Q. You hung out and what?

A. We basically just hung out, smoked weed and sold drugs.

We first note that defendant's counsel objected *after* the witness had answered the question, and he failed to make a motion to strike; thus, defendant waived this objection. *See State v. Burgin*, 313 N.C. 404, 409, 329 S.E.2d 653, 657 (1985) ("The one objection made was lodged after the witness responded to the question. Defendant made no motion to strike the answer, and therefore waived the objection." (citations omitted)). Furthermore, when the State repeated the question, defendant failed to object to either the question or the answer; this too would waive defendant's previous objection. *State v. Wilson*, 313 N.C. 516, 532, 330 S.E.2d 450, 461 (1985) ("Where evidence is admitted without objection, the benefit of a prior objection to the same or similar evidence is lost, and the defendant is deemed to have waived his right to assign as error the prior admission of the evidence." (citations omitted)). Lastly, although defendant's objections have been waived, we note that defendant raised plain error in his assignment of error but failed to argue it in his brief. *See* N.C.R. App. P. 10(c)(4) (In order to preserve an argument pursuant to plain error defendant must "specifically and distinctly" argue it.); N.C.R. App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). This argument is overruled.

B. Probation Officer Lecia Pharr's Testimony

[5] Defendant next contends that the trial court erred in admitting the testimony of probation officer Lecia Pharr who testified that defendant had been on probation. Defendant specifically argues that Ms. Pharr was erroneously allowed to testify regarding the following facts:

1) defendant was placed on probation in October 2005 for a criminal conviction; 2) defendant was on probation during 2005-06; 3) defendant was actively supervised by the Gaston County probation department and a probation officer in the summer and fall of 2006; and 4) defendant was on probation on December 6, 2006 at the time of the charged offense.

Before trial began, defendant filed a "motion in limine to prohibit testimony regarding defendant being on probation and previously being incarcerated[.]" (Original in all caps.) Defendant argued that "[a]dmission of such testimony would violate Evidence rules 404(b), 608, 609 and 403." Defendant argues in his brief that "the Trial Court denied defendant's objection" as to Ms. Pharr's testimony after voir dire. However, defendant's characterization of the trial court's action is not accurate.

STA        JRRY

[203 N.G  .    . 75 (2010)]

On the day defendant's ca⸱  as called for trial, the trial court stated, "And we had discussed     hambers that the Defendant had a motion in limine, that I think we reached the agreement that at such time that if the State may be offering that evidence that the district attorney will let me know, and I'll hear from Mr. Anthony." When the State announced its next witness was Ms. Pharr, the trial court sent the jury out and allowed voir dire examination. Defendant objected to any testimony which was "out of the scope of Judge Bridges' earlier ruling. He was very specific and Mr. Young's request was very specific at that point, for address, phone number and appointments he kept. That was the three things we addressed at the earlier hearing." The trial court did not "deny" defendant's objection, but sustained it in part and overruled it in part. The trial court specifically limited Ms. Pharr's testimony stating,

> I'll allow Ms. Pharr to testify what her job is. I don't want to get into the details of the job or the fact that she's a supervisor, a supervising probation officer. I'll allow her to testify to the conviction and the date of the conviction, which I heard her say is October 18 of '05, assault with a deadly weapon inflicting serious injury, in Cleveland County. I'll allow her to testify that he gave an address of 309 Biggers Street. I['ll] allow her to testify that he reported on December 6th and December 7th.
>
> . . . .
>
> I'll allow her to testify to that [phone] number. Now, otherwise, I'll sustain the objection. I don't want her to get into probation, terms of probation, sentence, any alleged violations. I'm going to sustain the objection to that.

Ms. Pharr then testified before the jury without any additional objection from defendant.

We first note that we have no record of any order or ruling from Judge Bridges in the record before this Court. We cannot speculate as to what was argued before Judge Bridges or what Judge Bridges' ruling was. Defendant's sole argument at trial concerned Judge Bridges' order, which was not provided to us in the record, so we cannot now say that the trial court erred in its determination as to Ms. Pharr's testimony. We also note that defendant never made any objection at trial during Ms. Pharr's testimony on the basis that it was beyond the scope permitted by Judge Bridges' earlier ruling. As to defendant's arguments on appeal pursuant to the North Carolina Rules of

Evidence 401-404, these issues have been waived as they were not raised before or argued to the trial court. *See Tellez* at ——, 684 S.E.2d at 736. Again, defendant failed to argue plain error, *see* N.C.R. App. P. 10(c)(4), 28(b)(6), and thus this argument is overruled.

C. Agent John Kaiser's Testimony

**[6]** Defendant next contends that the trial court erred in allowing the testimony of Agent John Kaiser which showed "that defendant was incarcerated in the Gaston County Jail shortly before the shooting and on probation in Gaston County at the time of the shooting and the letters . . . documenting that incarceration—was irrelevant character evidence[.]" During voir dire of Agent Kaiser, defendant's attorney raised arguments regarding the 5th Amendment and expert opinions. However, on appeal defendant raises arguments regarding North Carolina Rules of Evidence 401-404. Again, we note that defendant has not properly preserved this issue for appeal by his failure to raise it before the trial court. *See Tellez* at ——, 684 S.E.2d at 736. However, this time defendant has argued plain error.

> The plain error rule is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

> Therefore, if after thoroughly examining the record, we are not persuaded that the jury probably would have reached a different result had the alleged error not occurred, we will not award defendant a new trial.

*State v. Lofton*, 193 N.C. App. 364, 368, 667 S.E.2d 317, 320-21 (2008) (citations and quotation marks omitted). In addition to the substantial evidence presented by the State as to the crimes charged, the fact that defendant was on probation at the time of the incident was also presented by Officer Pharr. *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) ("Where evidence is admitted over objection,

and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." (citations omitted)). Furthermore, even assuming *arguendo* Agent Kaiser did testify defendant was incarcerated[1] and on probation *and* that the trial court erred in admitting evidence defendant had previously been incarcerated or on probation, we cannot now say that "the jury probably would have reached a different result had the alleged error not occurred[.]" *Lofton* at 368, 667 S.E.2d at 321. This argument is overruled.

D. Jailer Max Davis' Testimony

[7] Defendant also contends that the trial court erred in allowing Jailer Max Davis to testify that "1) defendant was booked and incarcerated in the Gaston County Jail on October 17, 2006; 2) defendant was an inmate in the Jail for some time; 3) defendant was photographed and completed a visitor list while he was in the Jail." First, as to testimony that "defendant was booked and incarcerated in the Gaston County Jail on October 17, 2006[,]" we find no such testimony. The relevant portions of the transcript which defendant cites in this argument do not include testimony by Jailer Davis that defendant was booked or incarcerated in October of 2006. The only time 17 October 2006 is mentioned is in regard to a jail visitor list and photograph of defendant. Defendant did not object to the visitor list and only objected to the photograph on the grounds of his "earlier objection[.]" However, defendant had not made an "earlier objection" regarding the 17 October 2006 photograph; he had objected on the prior day of the trial to entirely different photographs of defendant taken in December of 2006. Therefore, defendant has not properly preserved this issue for appeal.

Second, as to testimony that defendant was "an inmate in the Jail for some time[,]" we again do not find such a statement in the cited testimony. There was testimony that defendant was an inmate, but this testimony was not objected to nor does it indicate the length of time defendant was an inmate. Again, this issue has not been properly preserved for appeal.

---

1. Agent Kaiser did not specifically testify that defendant had been incarcerated in the Gaston County Jail prior to the shooting. In addition, the fact that defendant had been on probation would not necessarily mean that he had been previously incarcerated, as he could have received a suspended sentence and been placed on probation without ever having been incarcerated. Defendant's argument is apparently based upon the fact that Agent Kaiser identified letters which were addressed to defendant at the Gaston County jail, although the dates of these letters are not in the record before us.

Third, as to the 17 October 2006 photograph of defendant and the visitor list, as noted above, defendant failed to object to its admission beyond relying upon his "earlier objection," but the only "earlier objection" related to entirely different photographs taken in December of 2006. Defendant also failed to object to the introduction of the visitor list, State's exhibit 39.2. Defendant had previously objected to the introduction of a computer screen shot of the visitor list, State's exhibit 41, and the trial court sustained this objection based upon a lack of foundation. On the next day of trial, when the State presented the actual visitor list, State's exhibit 39.2, defendant made no objection. This argument has also not been preserved for appeal. Furthermore, defendant failed to argue plain error in his brief, *see* N.C.R. App. P. 10(c)(4), 28(b)(6), and thus this argument is overruled.

E.  Officer Wes Love

**[8]** Defendant next contends that the trial court erred in admitting Officer Wes Love's "hearsay evidence LaToya McSwain identified defendant's photograph in a pre-trial photo lineup identification procedure into evidence at trial[.]" As defendant failed to object at trial, we review for plain error. As noted above, even assuming *arguendo* that the trial court erroneously allowed this testimony regarding identification of defendant's photograph, in light of the State's evidence we do not conclude "that the jury probably would have reached a different result had the alleged error not occurred, we will not award defendant a new trial[,]" *Lofton* at 368, 667 S.E.2d at 321, particularly in light of the fact that Ms. McSwain also made an in-court identification of defendant as the individual who shot an SK[S] long gun into the house. This argument is overruled.

VI.  Insufficient Evidence

**[9]** Lastly, defendant argues the trial court erroneously denied his motion to dismiss as to his robbery and murder convictions. The jury convicted defendant of murder based on felony murder with the predicate felony being robbery with a dangerous weapon under N.C. Gen. Stat. § 14-87.

The standard of review for a trial court's denial of a motion to dismiss for insufficient evidence is well-settled:

Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the State and giving the State every

reasonable inference therefrom, there is substantial evidence to support a jury finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense.

Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility. Evidence is not substantial if it is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, and the motion to dismiss should be allowed even though the suspicion so aroused by the evidence is strong. This Court reviews the denial of a motion to dismiss for insufficient evidence *de novo.*

If substantial evidence, whether direct, circumstantial, or both, supports a finding that the offense charged has been committed and that the defendant committed it, the motion to dismiss should be denied and the case goes to the jury.

*State v. Wilkerson,* —— N.C. App. ——, ——, 675 S.E.2d 678, 680 (2009) (citations and quotation marks omitted).

A. Robbery with a Dangerous Weapon

Defendant argues that the "indictment in the robbery case alleged defendant took a 'handgun' and McSwain's 'pocketbook' from the presence, person, and residence of Petty and McSwain" but that "[a]t trial, there was not a scintilla of evidence defendant himself took a handgun and all the evidence showed any such taking was done by Archie." Defendant also argues that the evidence did not show how Ms. McSwain's pocketbook ended up with its "contents 'spilled out' under a[n] old 'door' in the carport of the nearby vacant house[.]" Essentially, defendant argues that there was no direct evidence that he actually took and carried away the pocketbook or gun from the person or presence of Ms. McSwain or Mr. Petty. However, direct evidence of defendant's taking the gun or pocketbook was not required. *See State v. Salters,* 137 N.C. App. 553, 557, 528 S.E.2d 386, 390 ("[J]urors may rely on circumstantial evidence to the same degree as they rely on direct evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. Rather, the law requires only that the jury shall be fully satisfied of the truth of the charge." (citations and quotation marks omitted)), *cert. denied,* 352 N.C. 361, 544 S.E.2d 556 (2000). Even if we assume

*arguendo* that defendant did not personally remove either the gun or the pocketbook from Mr. Petty's home or carry them away, the State presented substantial evidence that defendant made overt acts in an attempt to rob Mr. Petty by use of a firearm and that lives were endangered; indeed, Mr. Petty's life was lost.

"The elements of robbery with a dangerous weapon are: (1) an unlawful taking *or an attempt* to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other dangerous weapon; (3) whereby the life of a person is endangered or threatened." *State v. Cole*, —— N.C. App. ——, ——, 681 S.E.2d 423, 427 (2009) (emphasis added) (citation and quotation marks omitted). The crime of robbery with a dangerous weapon, as defined by N.C. Gen. Stat. § 14-87, includes within the definition of the crime an attempt to commit the crime; that is, the State may present evidence that defendant either completed the crime or that he attempted the crime, but either way the evidence would be sufficient that defendant may be found guilty of robbery with a dangerous weapon. *See* N.C. Gen. Stat. § 14-87 (2005).

Our Supreme Court has described the law regarding an attempt to commit robbery with a dangerous weapon:

> The elements of an attempt to commit any crime are: (1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense. An attempted robbery with a dangerous weapon occurs when a person, with the specific intent to unlawfully deprive another of personal property by endangering or threatening his life with a dangerous weapon, does some overt act calculated to bring about this result.

In *State v. Price*, 280 N.C. 154, 184 S.E.2d 866 (1971), this Court summarized the requirement of an overt act as follows:

> In order to constitute an attempt, it is essential that the defendant, with the intent of committing the particular crime, should have done some overt act adapted to, approximating, and which in the ordinary and likely course of things would result in the commission thereof. Therefore, the act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as

the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.

*State v. Miller*, 344 N.C. 658, 667-68, 477 S.E.2d 915, 921 (1996) (citations and quotation marks omitted).

In *State v. McDowell*, 329 N.C. 363, 407 S.E.2d 200 (1991), the Supreme Court determined "that the trial court erred in denying defendant's motion to dismiss the charge of attempted robbery with a dangerous weapon," *id.* at 368, 407 S.E.2d at 203, where the evidence failed to show that the defendant had actually intended to rob anyone and that the victim's "purse was left undisturbed on the front seat of her car, which tend[ed] to contradict the State's theory that defendant killed Mrs. Gillie in an unsuccessful attempt to take her purse." *Id.* at 390, 407 S.E.2d at 215.

However, the facts here are more similar to those in *Miller*, where the court noted evidence that the "defendant clearly intended to rob [the victim] and took substantial overt actions toward that end." *Miller* at 668, 477 S.E.2d at 922. Even though after shooting the victim, the defendant in *Miller* "became scared and ran away" without taking any property from the victim, the Court noted that "[t]he sneak approach to the victim with the pistol drawn and the first attempt to shoot were each more than enough to constitute an overt act toward armed robbery, not to mention the two fatal shots fired thereafter." *Id.* at 668-69, 477 S.E.2d at 922 (citation omitted).

Here, there was substantial evidence that defendant and Mr. Archie planned to rob Mr. Petty, obtained a weapon, formulated a plan to rob Mr. Petty, and went to Mr. Petty's house; defendant entered the house, which was occupied by both Ms. McSwain and Mr. Petty, and began shooting. Although the circumstantial evidence would suggest that defendant did actually take Ms. McSwain's pocketbook and remove it from the house, the crime of robbery with a dangerous weapon was complete even before any actual removal of the pocketbook. *See* N.C. Gen. Stat. § 14-87.

Defendant also argues that "there was insufficient evidence of taking from Petty's or McSwain's person or presence." However,

> [t]he word 'presence' . . . must be interpreted broadly and with due consideration to the main element of the crime-intimidation or force by the use or threatened use of firearms. 'Presence' here means a possession or control by a person so immediate that force or intimidation is essential to the taking of

the property. And if the force or intimidation by the use of firearms for the purpose of taking personal property has been used and caused the victim in possession or control to flee the premises and this is followed by the taking of the property in a continuous course of conduct, the taking is from the 'presence' of the victim.          .

*State v. Tuck,* 173 N.C. App. 61, 67, 618 S.E.2d 265, 270 (2005) (citations omitted).

The evidence here showed that both Ms. McSwain and Mr. Petty were present in the home when defendant arrived and began shooting. Ms. McSwain fled the residence, while Mr. Petty was shot and killed. Defendant had gone into the residence with a firearm with the stated intent of robbing Mr. Petty because he needed some money. He used "force or intimidation[,]" *id.*, by shooting into the residence in furtherance of his plan to rob someone for money. As noted above, even if we assume that defendant did not actually remove the pocketbook or gun from the persons of the two victims, the crime of robbery with a dangerous weapon was complete before the removal occurred.

Defendant last argues as to robbery with a dangerous weapon that "there was insufficient evidence the pocketbook was 'carried away.' Thus, there was no evidence defendant transported the pocketbook from McSwain's person or presence to the nearby carport on December 6." However, as explained above, the crime of robbery with a dangerous weapon was complete upon defendant's attempt, *see* N.C. Gen. Stat. § 14-87, even if he did not "carry away" the pocketbook or gun from the home, although we note that the circumstantial evidence would certainly support an inference that defendant removed the pocketbook from the residence and dumped it nearby after the shooting. We conclude there was sufficient evidence of robbery with a dangerous weapon for the trial court to deny defendant's motion to dismiss as the State presented testimony regarding all of the essential elements of the crime of robbery with a dangerous weapon. *See Cole* at ——, 681 S.E.2d at 427; *Wilkerson* at ——, 675 S.E.2d at 680.

B. Murder

Defendant's last argument is that

even if there [wa]s sufficient evidence of armed robbery, there is insufficient evidence of first-degree murder because there is

insufficient evidence of the essential element defendant killed Petty with a deadly weapon. There is simply no evidence defendant was the perpetrator of Petty's shooting. Thus, there was no direct, eyewitness, or forensic evidence defendant shot Petty.

Defendant's argument assumes that "direct, eyewitness, or forensic evidence" is required and overlooks the numerous cases in which our courts have held that circumstantial evidence is adequate to support a conviction of murder. *See, e.g., State v. Franklin,* 327 N.C. 162, 172, 393 S.E.2d 781, 787-88 (1990) ("While we concede that the evidence in this case is primarily circumstantial, we cannot say that the State's evidence is so lacking as to any material element that this Court must conclude, as a matter of law, that no reasonable juror could have found defendant guilty beyond a reasonable doubt."). Circumstantial evidence is frequently adequate to support a murder conviction, depending upon the facts of the individual case and the type of circumstantial evidence presented. *See, e.g., id.*

> When the evidence is circumstantial, the trial court's function is to test whether a reasonable inference of the defendant's guilt of the crime charged may be drawn from the evidence. *See also State v. Rowland,* 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965) ("[I]t is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty."). The Court views the evidence in the light most favorable to the State.

*State v. Lowry,* —— N.C. App. ——, ——, 679 S.E.2d 865, 870 (citations, quotation marks, and brackets omitted), *cert. denied,* 363 N.C. 660, 686 S.E.2d 899 (2009). Circumstantial evidence of guilt is sometimes classified into

> several rather broad categories. Although the language is by no means consistent, courts often speak in terms of proof of motive, opportunity, capability and identity, all of which are merely different ways to show that a particular person committed a particular crime. In most cases these factors are not essential elements of the crime, but instead are circumstances which are relevant to identify an accused as the perpetrator of a crime.

*Id.* at ——, 679 S.E.2d 870-71. The court examined several cases involving circumstantial evidence and concluded that where the State has presented evidence of "both motive and opportunity[,]" the evidence will normally be sufficient to survive a motion to dismiss. *Id.* at , 679 S.E.2d at 873.

Here, the evidence "viewed in the light most favorable to the State," *Wilkerson* at ——, 675 S.E.2d at 680, shows that defendant had the motive, the opportunity, and the capability to kill Mr. Petty. Defendant entered Mr. Petty's home, shooting repeatedly, seeking Mr. Petty in an attempt to rob him, and immediately after defendant fired the weapon, Mr. Archie found Mr. Petty, dead or dying from gunshot wounds. The State presented very substantial evidence of defendant's motive to rob Mr. Petty, the actual robbery, defendant's opportunity to kill Mr. Petty, and defendant's capability to kill Mr. Petty by shooting him with the weapon defendant procured for the very purpose of robbing Mr. Petty. It is entirely unnecessary that the State present eyewitness testimony that defendant shot Mr. Petty, as suggested by defendant's argument. *See, e.g., Franklin*, at 170-74, 393 S.E.2d at 786-89. The trial court did not err in denying defendant's motion to dismiss for insufficiency of the evidence. This argument is overruled.

## VII. Conclusion

For the foregoing reasons, we arrest judgment on defendant's conviction for robbery with a dangerous weapon, remand defendant's judgment for discharging a weapon into occupied property for correction of a clerical error, and find no prejudicial error as to defendant's other arguments.

JUDGMENT ARRESTED, REMANDED FOR CORRECTION OF CLERICAL ERROR, NO PREJUDICIAL ERROR.

Judge STEPHENS concurs.

Judge BEASLEY concurs with separate opinion.

BEASLEY, Judge concurring in a separate opinion.

While I concur with the result in the majority opinion, I am compelled to write separately on the issues below.

Defendant did not preserve his objection to Mr. Archie's testimony and requested that we review his argument applying the plain error standard. However, Defendant did not specifically argue this. I agree with the majority that N.C. R. App. P. 28 (b)(6) dictates our actions on this issue and that Defendant's argument is deemed abandoned. As any further analysis of Defendant's contentions is unnecessary, my analysis on this issue would cease here.

**STATE v. CURRY**

[203 N.C. App. 375 (2010)]

It is worth noting however, that the Defendant argues that the trial court committed prejudicial error by admitting Mr. Archie's testimony about Mr. Archie and Defendant's relationship as noted by the dialogue set forth in the majority opinion.

> Q. Okay. While you and Martavious Curry were becoming friends, what type of activities did you all participate in? And I'm talking about such as playing cards, going to the movies, generally, what types of things did you all do together to become friends?
>
> A. We just hung out. You know what I'm saying? Just hang out, sell drugs.
>
> MR. ANTHONY: Objection.
>
> THE COURT: Overruled

The majority opinion correctly states this series of questioning. However, it was not the question to which Defendant objected, but the answer. As it was unlikely that Defendant's counsel anticipated that Mr. Archie would testify that he and Defendant sold drugs, the only logical opportunity for Defendant's counsel to object was *after* the witness had answered the question. *See State v. Goss*, 293 N.C. 147, 155, 235 S.E.2d 844, 850 (1977) ("Where inadmissibility of testimony is not indicated by the question, but appears only in the witness' response, the proper form of objection is a motion to strike the answer, or the objectionable part of it, made as soon as the inadmissibility is evident").

However, I agree with the majority that pursuant to well-grounded law in North Carolina, Defendant waived this issue. Defendant's counsel asked the trial court to repeat its ruling, whereby the prosecutor again asked Mr. Archie about the manner by which he and Defendant established a relationship, Mr. Archie essentially repeated his answer that he and the Defendant "hung out and sell drugs" and the trial court repeated its ruling, overruling Defendant's objection. Defendant's counsel did not move to strike, nor renew his objection, therefore this issue was not preserved for our review. *Id.*; *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995). Further, any error that may have resulted from the unfavorable testimony provided by Mr. Archie was harmless.