An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-570
NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

    v.

TAMMY LYNN KAY

Wayne County
No. 11 CRS 5499


Appeal by defendant from judgment entered 31 May 2012 by Judge W. Allen Cobb in Wayne County Superior Court. Heard in the Court of Appeals 30 December 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Ebony J. Pittman, for the State.*
>
> *Gilda C. Rodriguez for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

A jury found defendant guilty of attempted misdemeanor larceny. The trial court sentenced her to thirty days in jail, suspended, and placed her on eighteen months of supervised probation. Defendant filed timely notice of appeal.

On the morning of 16 September 2011, John Tyndall observed a white pickup truck parked in the driveway of a vacant house at 665 Vail Road owned by his friend, Facie Denning, who lived

across the street from the property.  The truck was backed into the driveway "at a 45 degree angle to the back corner of the house."  Knowing that Denning did not drive a white truck, Tyndall decided to investigate.  To the left of the vehicle, he saw an unfamiliar male and female – subsequently identified as Marvin Aldridge and defendant – "slouched down in a leaning forward position" as though "grabbing ahold of something [and] pulling it."  When they saw Tyndall, defendant and Aldridge stood up with a "deer in the headlight look" and started walking toward him.  When Tyndall asked why they were on the property, "[t]hey kind of hemmed and hawed around and . . . said oh we're – we were just checking out the house and – and ah, somebody had told us it was for rent."  After telling the pair that they had been misinformed and that the owner of the property lived across the street, Tyndall phoned Denning and saw him step out of his house onto his driveway.

As defendant and Aldridge walked back to their truck, Tyndall spotted Denning's "tiller sitting behind" where they had been standing.  The tiller had been moved five or six feet from its usual location under a piece of sheet metal behind a shed in the back yard.  Fresh dirt along the grass leading to the tiller made it "pretty evident that it had just been moved."  Tyndall

noted the truck's license number and phoned the sheriff's department as defendant and Aldridge drove across the road toward Denning's residence.

Defendant and Aldridge spoke to Denning briefly in his driveway. They claimed to be from Pikeville and "said that they had heard that the house was for rent and they were interested in renting the house." Denning, who bought the property in 1958 and had never rented it or advertised it for rent, told them the house was not in a condition for renting. Defendant and Aldridge backed out of Denning's driveway and drove away just before a sheriff's deputy arrived.

When Denning joined Tyndall to look over the property, they discovered that "a piece of copper going from [an] oil drum to [the] house . . . had been broken off and some more other pieces of metal" previously strewn around the barn "had been grouped together and laid in a pile" in the walkway between the barn and the house. Denning acknowledged that he had not been to the property in "a day or two" but noted the "freshly moved" earth and marks on the grass where the tiller had been dragged.

Captain Richard Lewis of the Wayne County Sheriff's Department responded to 665 Vail Road within five minutes of Tyndall's call. Tyndall and Denning described their encounter

with the occupants of the white pickup truck and showed Lewis the tiller, copper tubing, and scrap metal that had been moved. Captain Lewis conveyed the information to Detective Lieutenant Keith Harris, who had located the white pickup truck on U.S. 117 North in the Belfast community. Aldridge was driving the vehicle, and defendant was in the passenger seat. Defendant and Aldridge told Harris that they were looking for a house to rent, and that defendant "had been told [by] someone that [Denning's] house was for rent." After conferring with Captain Lewis, Detective Harris "wrote both of them a citation for the attempted larceny of the scrap metal and the tiller."

On appeal, defendant claims the trial court erred in overruling her objection to a portion of Detective Harris' testimony describing his investigation of the incident. Specifically, she challenges the detective's statement that he consulted the records of local scrap dealers to determine whether they had previous interactions with Aldridge:

> Q. What else did you discuss with [defendant]?
>
> A. How long she had been, you know, dating . . . this gentleman.
>
> Q. And what did you do after that?
>
> A. Based on what I had found out from Captain Lewis and reviewing what they had

told me about being there at the home *I also did a records check with local scrap yards to find out information on Mr. Aldridge, and based on the information I was able to find there*, and also the information I found from Captain Lewis, and inconsistencies in the story and, you know, everything that happened there at the scene I –

[DEFENSE COUNSEL]: Objection, your Honor. Mr. Aldridge is not on trial in this case. I'd object on relevance grounds –

THE COURT: Overruled.

. . . .

[PROSECUTOR]: Go ahead, sir.

A. I wrote both of them a citation for the attempted larceny of the scrap metal and the tiller.

(Emphasis added). Defendant contends that Detective Harris' allusion to his contact with local scrap yards was either irrelevant to the charge against her or unduly prejudicial in view of its limited probative value. *See* N.C. R. Evid. 401, 403.

Notwithstanding her objection immediately following the contested testimony, we conclude that defendant has failed to preserve this issue for appellate review:

> "Where inadmissibility of testimony is not indicated by the question, but appears only in the witness' response, the proper form of objection is a motion to strike the answer, or the objectionable part of it, made as

> soon as the inadmissibility is evident." When counsel objects after a witness has answered the question and fails to make a motion to strike, the objection is waived.

*State v. Gamez*, __ N.C. App. __, __, 745 S.E.2d 876, 877 (2013) (quoting *State v. Goss*, 293 N.C. 147, 155, 235 S.E.2d 844, 850 (1977); citing *State v. Curry*, 203 N.C. App. 375, 387, 692 S.E.2d 129, 138 (2010)).  The transcript shows that defendant made no motion to strike Detective Harris' testimony.  Accordingly, she waived her objection.  Because she has not sought plain error review pursuant to N.C. R. App. P. 10(a)(4), her argument is overruled.  *Id.* at __, 745 S.E.2d at 878.

No error.

Chief Judge MARTIN and Judge DILLON concur.

Report per Rule 30(e).