An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1381

NORTH CAROLINA COURT OF APPEALS

Filed:  29 July 2014

STATE OF NORTH CAROLINA

    v.

RAYMOND PARKER

Durham County
No. 11 CRS 51676

Appeal by defendant from judgment entered 18 May 2012 by Judge Donald W. Stephens in Durham County Superior Court. Heard in the Court of Appeals 7 April 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Jay L. Osborne, for the State.*

> *Farber Law Firm, P.L.L.C., by Sarah Jessica Farber, for defendant-appellant.*

CALABRIA, Judge.

Raymond Parker ("defendant") appeals from a judgment entered upon a jury verdict finding him guilty of two counts of robbery with a dangerous weapon ("RWDW") and one count of conspiracy to commit RWDW.  We find no error.

## I. Background

Shortly before 9:00 p.m. on 1 March 2011, two men wearing dark masks entered the Dollar General Store located at 2000 Chapel Hill Road, in Durham, North Carolina ("the Dollar General" or "the store"). One of the men was wearing a turquoise and blue jacket with a Reebok emblem on the back. At that time, employees Raquel Harris ("Harris") and William Adams ("Adams") and customer Shelton Henderson ("Henderson") were the only other individuals in the store.

One of the men held a silver revolver to Henderson's head and demanded that Henderson give him all of his money. Henderson complied. The men then forced Harris and Adams to empty the store's cash registers and safe before exiting the store on foot.

At the time of the robbery, Curtis Little ("Little") was sitting at a bus stop near the Dollar General. Little, who knew defendant, recognized defendant's red Cadillac ("the Cadillac") drive in front of the bus stop a few minutes before 9:00 p.m. and park near the Dollar General. Several minutes later, Little observed two men run from the front of the store, enter the Cadillac, and drive away. Little reported his observations to law enforcement officers and informed them where defendant lived.

Later that evening, several officers from the Durham Police Department ("DPD") went to defendant's apartment where they observed a burgundy Cadillac parked outside. A man later identified as Alonzo Greene ("Greene") was sitting in the passenger seat of the Cadillac and a dark mask was on the ground beside the passenger door. Greene was taken into custody.

The officers encountered defendant as he was exiting his apartment. Although defendant denied owning the Cadillac, he had a GM key in his possession which started the vehicle. In addition, defendant's wallet was discovered inside the Cadillac's console and dark gloves were found between the console and the seat.

DPD officers then obtained and executed a search warrant on defendant's apartment. In the bedroom, officers seized a turquoise and blue jacket with a Reebok emblem, a large amount of cash found between two mattresses, and plastic rolls of coins found under a pillow. A search of the kitchen revealed a bundle of items hidden under the refrigerator. The bundle included two off-white sleeves, a black toboggan cap and a black sleeve, both with hand-cut eye holes, a silver .38 caliber revolver, and a camouflage sleeve also containing two hand-cut eye holes.

Subsequent DNA testing determined that defendant's DNA was found on the camouflage sleeve.

Defendant was arrested and indicted for two counts of RWDW and one count of conspiracy to commit RWDW. The first count of RWDW in the indictment listed the victims' names as "Raquel Harris" and "William Davis." Prior to trial, the State moved to amend the indictment to change the name from William "Davis" to William Adams, the victim's actual name. Defendant objected to the amendment and the trial court denied the State's motion to amend. However, the court noted that the indictment was not defective as to the issue of whether Raquel Harris, the other victim, was robbed. Based on the trial court's ruling, neither the name William Davis nor the name William Adams appeared on the jury verdict sheet.

Defendant also made a pretrial motion to exclude the camouflage sleeve which DPD officers found in defendant's apartment on the grounds that this evidence was unduly prejudicial and irrelevant. The trial court determined that the camouflage sleeve was relevant for the purpose of showing that defendant may have exercised dominion and control over the other items officers found bundled together under defendant's refrigerator and denied defendant's motion.

Beginning 14 May 2012, defendant was tried by a jury in Durham County Superior Court. At the close of the State's evidence and at the close of all the evidence, defense counsel made a motion to dismiss for insufficient evidence. Both motions were denied. On 18 May 2012, the jury returned verdicts finding defendant guilty of all charges. The trial court sentenced defendant to a minimum of 90 months to a maximum of 117 months for the two RWDW offenses and a minimum of 38 months to a maximum of 55 months for the conspiracy offense. The sentences were to be served consecutively in the North Carolina Division of Adult Correction. Defendant appeals.

## II.  Fatal Variance

Defendant argues that the trial court erred in denying his motion to dismiss for insufficient evidence because there was a fatal variance between the indictment and the evidence produced. We disagree.

A "'defendant may raise the question of variance between the indictment and the proof by a motion' to dismiss, but defendant must also state this at trial as the grounds for the motion to dismiss." *State v. Curry*, 203 N.C. App. 375, 384, 692 S.E.2d 129, 137 (2010) (citation omitted). In the instant case, defendant made motions to dismiss the charges against him on the

basis of insufficient evidence. Specifically, defendant argued that the State presented insufficient evidence that he was the perpetrator of the alleged offenses. However, defendant never argued that the charges should have been dismissed on the basis of a fatal variance. Accordingly, he has waived appellate review of this issue. *See id.* at 385, 692 S.E.2d at 138. This argument is overruled.

### III. Admission of Camouflage Sleeve

Defendant argues that the trial court erred by denying his motion to exclude the camouflage sleeve. Specifically, defendant contends that there was no legitimate purpose for admitting this evidence. We disagree.

"The admissibility of evidence is governed by a threshold inquiry into its relevance. In order to be relevant, the evidence must have a logical tendency to prove any fact that is of consequence in the case being litigated." *State v. Griffin*, 136 N.C. App. 531, 550, 525 S.E.2d 793, 806 (2000) (internal quotations and citation omitted).

> Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make

> the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the "abuse of discretion" standard which applies to rulings made pursuant to Rule 403.

*Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (internal quotations and citation omitted).

In the instant case, defendant argues that the camouflage sleeve was irrelevant because there was no evidence to prove that it was used during the robbery. However, the camouflage sleeve, which contained defendant's DNA, was found under defendant's refrigerator bundled together with, *inter alia*, a black mask and a silver revolver. Eyewitnesses had described both a black mask and a silver revolver as items which were used in the commission of the robbery. In light of these facts, the camouflage sleeve was relevant because it provided some evidence of a connection between defendant and all of the items under the refrigerator, such that the sleeve could be used to establish that defendant exercised dominion and control over items matching the description of items used in the commission of the robbery. Consequently, the trial court properly admitted this evidence. This argument is overruled.

## IV. Conclusion

Defendant failed to preserve the issue of a fatal variance between the indictment and proof at trial.  The trial court did not err by determining that the camouflage sleeve was relevant. Defendant received a fair trial, free from error.

No error.

Chief Judge MARTIN and Judge McGEE concur.

Report per Rule 30(e).